UNITED STATES of America, Plaintiff–Appellee,

v.

John ZARAGOZA, Defendant–Appellant.

No. 96–2041.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 13, 1996.

Decided June 25, 1997.

Andrew B. Baker, Jr. (argued), Office of the United States Attorney, Dyer, IN, for Plaintiff–Appellee.

Marvin Bloom (argued), Chicago, IL, for Defendant–Appellant.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

John Zaragoza pleaded guilty to a single count of racketeering in violation of 18 U.S.C. § 1962(c). He was sentenced to forty-one months in prison, restitution of $274,872.81 and three years of supervised release. In this direct appeal, he asks us to review several sentencing decisions of the district court. Because we believe that the district court's determinations were in accordance with established legal principles and that its factual determinations were grounded in the record, we affirm its judgment.

# I

## BACKGROUND

A detailed rendition of Mr. Zaragoza's activities is not required to address the issues that he submits for our review. We therefore shall set forth only those facts that are central to his contentions. We note that this court already has dealt extensively with the activities in which Mr. Zaragoza was involved in the appeals of his confederates. *See United States v. Steele*, 91 F.3d 1046 (7th Cir. 1996); *United States v. Altier*, 91 F.3d 953 (7th Cir.1996).

Mr. Zaragoza was charged in a multiple-count indictment with a variety of federal offenses. He initially pleaded not guilty to the indictment, but, as trial approached, entered into a plea agreement with the government. In exchange for a plea of guilty to Count 1 of the indictment, which charged racketeering, the government undertook to ask for dismissal of the other counts. The underlying racketeering acts set forth in Count 1 were also detailed in the presentencing report. These acts included Mr. Zaragoza's misrepresentation that he would be the sole owner of a General Motors dealership under a minority recruitment program, his participation in a check kiting scheme designed to defraud a federally insured financial institution, his involvement in the procurement of vehicles from a Florida automobile auction through mail and wire fraud, his wrongful retention of premiums on credit life and disability insurance premiums, his false insurance claim of a theft loss from a tobacco store that he owned, and, of particular importance in this appeal, his participation in the attempted arson of his automobile dealership.

On April 16, 1996, the district court sentenced Mr. Zaragoza on Count 1. Because of the variety of predicate acts involved in the charged racketeering, the court had to determine the appropriate offense guideline to apply. *See* U.S.S.G. § 2E1.1. It chose the arson guideline, § 2K1.4(a)(1). The district court found that a preponderance of the evidence supported its determination that Mr. Zaragoza knowingly participated in the attempted arson and that he knowingly created

a substantial risk of death or serious bodily injury by packing the dealership with cars soaked in gasoline and attempting to set them on fire. The district court put it bluntly: "Absolutely no doubt in my mind that Mr. Zaragoza was involved in this arson." Sent. Tr.III at 22; "this defendant ... knew of that risk." *Id.* at 25. It sentenced Mr. Zaragoza to forty-one months of imprisonment.

## II

## DISCUSSION

### A.

■ The applicable standards for our review were set forth comprehensively and succinctly in *United States v. Golden*, 954 F.2d 1413, 1416 (7th Cir.1992). The district court's determinations of fact are only disturbed when they are clearly erroneous. Questions of law are, of course, subject to our de novo review.

■ Mr. Zaragoza contends that the district court erroneously applied the arson guideline. In his view, the government failed to prove that he knowingly participated in the arson attempt. Mr. Zaragoza notes that evidence was presented that supports the opposite conclusion. He points out that, although he did buy extra insurance, he did so at the behest of the insurance agent. He also contends that he was excluded from the car dealership's day-to-day operations by Gerald Altier soon after Mr. Zaragoza obtained the dealership and that Altier and Ron Monico made all important decisions. He therefore claims that he did not know that Jackie Steele had invoiced the cars on the lot. He further claims that he did not understand that Altier's removal of his personal belongings, combined with his driving all the cars inside the dealership, meant that an arson was about to occur. Finally, he contends that Altier had threatened him and his family and probably was behind an attempted abduction of his son. Although Mr. Zaragoza admits that he knew the business was in financial trouble and that he had retained a bankruptcy attorney, he asserts that he rebutted the government's evidence and that

the district court should have sentenced him under U.S.S.G. § 2F1.1, which establishes a base offense level of 6 for fraud.

Before the district court, the government noted that there was significant, albeit circumstantial, evidence of Mr. Zaragoza's complicity in the arson. The insurance had been increased on the building, although the government admitted that it was done "prior to any knowledge or any discussion about an arson." Sent. Tr.III at 11. There was evidence of a meeting between Mr. Zaragoza, his confederates, and another individual in which they discussed arson. Mr. Zaragoza had perpetrated a similar insurance fraud involving his tobacco store. Mr. Zaragoza was present the day that Steele came to the dealership and inventoried the cars. The night before the arson, Mr. Zaragoza fired the security guards. Mr. Zaragoza helped to move the cars within the dealership on the night of the attempted arson. Although Mr. Zaragoza claimed that such a repositioning of the vehicles had been undertaken previously because of a snowfall, there was evidence from at least two other witnesses to the contrary. The dealership's financial situation was poor. The government also pointed out to the district court that, even if Mr. Zaragoza had not known of the arson in advance, he knew the next morning when he was told that Steele had botched the job. Nevertheless, he misrepresented the situation to investigating authorities.

We must conclude that the district court had before it sufficient evidence to permit a determination, by a preponderance of the evidence, that Mr. Zaragoza knowingly participated in the arson. In essence, Mr. Zaragoza's only argument is that he offered evidence to rebut the government's submission and that therefore the government did not prove that he knowingly participated in the arson. The district court was required to make credibility determinations in order to decide this issue. It made those determinations, and they are supported by the evidence of record. There is no basis for a claim that the district court clearly erred in its determination of the facts.

## B.

■ The guideline section pertaining to arson, U.S.S.G. § 2K1.4, provides in part that the base offense level shall be 24 if the offense "created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly."

Mr. Zaragoza submits that the district court erred in setting the base offense level at 24 under § 2K1.4(a)(1) rather than 20 under § 2K1.4(a)(2) because, in his view, the attempted arson of the dealership did not create a substantial risk of serious bodily injury. No fire or explosion actually occurred. No persons were on the premises. Nearby dwellings were unoccupied. · Fire fighters were at their station across the street. Furthermore, he contends, the evidence was insufficient to prove that he knew that such a risk was created by his actions and those of his confederates.

The district court found that the greater base offense level under § 2K1.4(a)(1) was warranted ˙ because Mr. Zaragoza's actions created a substantial risk of death or injury, and he acted knowingly in creating that risk. We believe that the district court was on solid ground both with respect to its interpretation of the law and its understanding of the facts. Our colleague, Judge Flaum, carefully reviewed the element of "knowingly" in Altier and held that this element was fulfilled when the defendant is aware of the nature of his conduct and the attendant circumstances and aware that his conduct " 'is practically certain' " to cause a substantial risk of death or serious injury. *Altier*, 91 F.3d at 957 (quoting the Model Penal Code § 2.202(b)). The district court made clear that Mr. Zaragoza knew of the risk:

> How could it be unknown to this defendant, all Defendants in this case, who this Court finds were part of the arson, that this large commercial building, ablaze from 35 gallons of gasoline located in an urban area presents a substantial risk of bodily harm to others.

The facts that the defendant, even this defendant, may not have understood there would have been an explosion and that he did not—there was not a success in the ignition of the fire, that's not really relevant.

It goes to the Defendant's appreciation of the potential results of their conduct. In this case, Zaragoza's conduct.

He understood and it was intended by Mr. Zaragoza and the others that there would be a large fire.

Sent. Tr.III at 23–24. The contemplated conflagration was attempted in an urban area. As Judge Kanne has noted for the court, such a situation "is virtually a per se reckless endangerment of others." *United States v. Golden*, 954 F.2d 1413, 1417 (7th Cir.1992); accord *United States v. Hicks*, 106 F.3d 187, 191 (7th Cir.), cert. denied, —— U.S. ——, 117 S.Ct. 2425, 138 L.Ed.2d 188 (1997).[1] As did the panel in Steele, 91 F.3d at 1051–52, and the panel in *Altier*, 91 F.3d at 957–58, we believe the evidence of record amply supports the district court's determination that Mr. Zaragoza knowingly "created a substantial risk of death or serious bodily injury." U.S.S.G. § 2K1.4(a)(1).

## C.

■ Finally, Mr. Zaragoza asserts that the district court ought to have granted a downward departure because of the coercion and duress that he endured in the form of threats to his family and the attempted abduction of his son. We do not have jurisdiction to review a district court's decision not to depart downward from the Guidelines. *United States v. Jones*, 55 F.3d 289, 292 (7th Cir.), cert. denied, —— U.S. ——, 116 S.Ct. 161, 133 L.Ed.2d 104 (1995). The only exception is when it is evident that the district court did not depart downward because it concluded that it did not have the legal authority to effect such a departure. *United States v. Wright*, 37 F.3d 358, 361 (7th Cir. 1994). Here, the district court clearly was

---

1. We fail to understand how the presence of a fire station across the street from the dealership significantly undercuts the district court's determination. On the contrary, the district court could have concluded that the possibility of an explosion placed the lives of the fire fighters stationed there in significant jeopardy even before they received the alarm.

under no such misapprehension. The court stated: "I choose not to depart." Sent. Tr. III at 28.

## Conclusion

The district court's sentencing decisions were in accordance with established legal principles, and its factual determinations were well grounded in the record. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.