**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Lee JOHNSON, Defendant–
Appellant.**

**No. 96–5524.**

United States Court of Appeals,
Sixth Circuit.

Argued May 1, 1997.

Decided June 17, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied July 25, 1997.

S. Delk Kennedy, Jr., (argued and briefed), Office of the U.S. Attorney, Nashville, Tennessee, for Plaintiff–Appellee.

Henry A. Martin, (argued and briefed), Federal Public Defender's Office, Nashville, Tennessee, for Defendant–Appellant.

Before: GUY, NELSON, and NORRIS, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Defendant, Robert Lee Johnson appeals the sentence imposed after he pleaded guilty to criminally conspiring to violate the constitutional rights of black citizens in violation of 18 U.S.C. § 241. Defendant contends that the district court erred when it calculated his base offense level under the United States Sentencing Guidelines ("U.S.S.G."). For the reasons discussed below, we affirm.

The one-count information to which defendant pleaded guilty was based upon events which took place on January 19, 1995. Defendant had spent that day drinking with two of his friends. When the conversation turned to race, defendant declared his hatred of blacks, and the group decided to "burn a black church." The group first attacked a black-owned business called Sweetie Petie Tavern. The attack occurred at night when the structure was unoccupied. After the group burned a cross in front of the building, they threw beer bottles containing kerosene inside, using strips of a child's shirt as wicks. However, the kerosene failed to ignite and the damage to the tavern was minimal.

Their next target was the Friendship Baptist Church. Once again, the group first burned a cross before they attempted to torch the church. They were more successful this time, and a fire developed. Fortunately, constable and volunteer fireman Terry Potts happened to be in the vicinity, and he managed to get the fire under control. Nonetheless, damage to the building was estimated at $12,312.09.

The group then proceeded to the Canaan African Methodist Episcopal Church, which also had a predominantly black congregation. They again burned a cross in front of the church, and threw a bottle containing kerosene into the building. Fortuitously, the heat from the resulting fire caused a water pipe to burst, which put out the blaze. This time, damage to the building was estimated at $7,750.

In calculating defendant's sentence, the district court applied the 1994 version of the Sentencing Guidelines. According to § 2H1.1, the section of the guidelines that prescribes the offense level for violations of 18 U.S.C. § 241, the statute of conviction in this case, the base offense level is the greater of either 15 or "2 plus the offense level applicable to any underlying offense." Here, the underlying offense was arson, the base offense level for which is governed by U.S.S.G. § 2K1.4. Section 2K1.4 reads in relevant part as follows:

(a) Base Offense Level (Apply the Greatest):

(1) 24, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly....

(2) 20, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than the participant in the offense; [or] (B) involved the destruction or attempted destruction of a structure other than a dwelling. . . .

The district court agreed with the government that § 2K1.4(a)(1) applies in this case because defendant knowingly "created a substantial risk of death or serious bodily injury,"[1] setting defendant's base offense level at 26. The court observed that the fires occurred in rural settings which were served by a volunteer fire department. Furthermore, defendant used an accelerant (kerosene) when he started each fire. The fact that more extensive damage was avoided was the result of good fortune: in one instance, volunteer fireman Potts was in the vicinity; in another, a water pipe burst at an opportune moment. Finally, the court found that the risk of serious bodily injury was "clearly foreseeable, [because] they either knew or should have known of the likelihood of a response by fire fighters or other emergency personnel."

■ On appeal, defendant contends that § 2K1.4(a)(2)(B), rather than § 2K1.4(a)(1), governs his crime, and that the district court should therefore have set his base offense level at 20, plus the two-level increase mandated by § 2H1.1. The standard governing our review of a sentence is well-established: "The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *accord United States v. Turner*, 995 F.2d 1357, 1365 (6th Cir.1993). Moreover, a trial court's determination that a defendant "knowingly created a

substantial risk of death or serious bodily injury is a finding of fact that will not be disturbed unless clearly erroneous." *United States v. Honeycutt*, 8 F.3d 785, 787 (11th Cir.1993), *accord United States v. Beyer*, 106 F.3d 175, 180 (7th Cir.1997).

■ Whether application of U.S.S.G. § 2K1.4(a)(1) is appropriate involves a two-step inquiry. *United States v. Karlic*, 997 F.2d 564, 569 (9th Cir.1993). First, we must determine whether defendant's actions created a substantial risk of death or serious bodily injury. Courts of appeal considering this issue have declined to develop any clear litmus test for resolving this point; instead, they have generally adopted a case-by-case approach which requires assessment of all relevant factors. *See, e.g., Turner*, 995 F.2d at 1365; *Honeycutt*, 8 F.3d at 788. As previously mentioned, we review such fact-intensive inquiries for clear error.

While the damage caused by the three fires set by defendant was relatively minor, we do not assess the degree of risk created with the benefit of hindsight. *See Honeycutt*, 8 F.3d at 787. Instead we must assess the danger posed at the time the fires were set. The district court concluded that the risk of serious bodily injury was substantial, relying in part upon the fact that the fires were set within a short span of time, and that they were located within areas served by a volunteer fire department. In our view, it is reasonable to assume that volunteer firefighters will be less experienced and not as well trained as their professional counterparts. Likewise, it is logical to presume that, when resources are stretched thin by multiple fires, the risk of serious bodily injury to one or more volunteers increases. Under these circumstances, we detect no error in the district court's conclusion that defendant created a substantial risk of bodily injury by setting the fires.[2]

---

1. Application Note 2 provides, "Creating a substantial risk of death or serious bodily injury includes creating that risk to fire fighters and other emergency and law enforcement personnel who respond to or investigate an offense." U.S.S.G. § 2K1.4, comment. (n. 2) (Nov.1994).

2. We note that other factors—use of accelerants and the wooden composition of at least one of the targeted churches—also support such a finding. However, we assume that virtually every instance of arson includes use of accelerants to some extent, and we therefore do not rely upon the presence of relatively small amounts of kerosene at the fires to support our holding.

■ The second step of our analysis requires us to determine whether the defendant "knowingly" created a substantial risk of death or serious bodily injury. The answer to this inquiry is not always as clear cut as one might hope. On one hand, a defendant would certainly act with the requisite knowledge if he set a fire during the night in an apartment building that he knew to be inhabited. On the other hand, we would be hard-pressed to find that an individual knowingly created a substantial risk when he torched his neighbor's garage, believing it to be empty, when it in fact contained explosives. In this case, however, we conclude that the sentencing court correctly determined that defendant was aware of the factors that elevated the degree of risk.

Because the guidelines do not define "knowingly," several courts of appeal have looked to the Model Penal Code for help in defining that term. *United States v. Ruiz,* 105 F.3d 1492, 1507–08 (1st Cir.1997); *Honeycutt,* 8 F.3d at 787; *Karlic,* 997 F.2d at 569. The Model Penal Code defines "knowingly" as follows:

> A person acts knowingly with respect to a material element of an offense when:
>
> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

Model Penal Code § 2.022(2)(b). The Model Penal Code's definition of the culpable mental state of knowledge as "practically certain" that conduct will cause a certain result tends to track the accepted understanding of the term as it is used in the context of criminal law.[3]

In assessing whether defendant knowingly created a substantial risk, the district court

observed that "[t]he classic well-accepted definition of knowingly is that an act is done knowingly if it's done voluntarily and intentionally and not by accident or mistake." In our view, the district court's conclusion that defendant acted knowingly is not clearly erroneous. Defendant was aware that his conduct produced a combination of factors which were practically certain to result in an elevated risk to the volunteer firefighters who were called upon to deal with the fruits of his conduct. He created for those volunteer firefighters a substantial risk of death or serious bodily injury. Since it is the knowing creation of the risk, not the actual outcome, that is the critical inquiry, we conclude that defendant possessed the requisite mental state to justify application of § 2K1.4(a).

For the foregoing reasons, the sentence imposed by the district court is **affirmed.**

---

**3.** For example, *corpus juris secundum* explains the meaning of the word "knowingly" in criminal law as follows:

> To act knowingly with respect to conduct or to a circumstance described by a statute defining an offense a person must be aware that his conduct is of such nature or that such circum-

stance exists. A person acts knowingly with respect to a result when he is aware that his conduct is practically certain to cause the result. An act is done knowingly if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. 22 C.J.S. *Criminal Law* § 36.