132 F.3d 37
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio P. MACRI, Defendant-Appellant.
 No. 96-3849.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 12, 1997.
Decided Dec. 16, 1997.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division, No.95 CR 62; Robert L. Miller, Jr., Judge.
 Before ESCHBACH, COFFEY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Antonio P. Macri pleaded not guilty to one count of aiding and abetting arson, 18 U.S.C.
 
 
 2
 § 844(I), and to two counts of mail fraud, 18 U.S.C. § 1341. A jury acquitted Macri of the arson charge but found him guilty of both mail fraud counts. At sentencing, the district court held Macri responsible for the loss caused by the arson and for exposing others to the risk of serious bodily injury, and increased his sentence accordingly. Macri appeals this upward departure. We affirm.
 
 
 3
 In 1987, Ron Moore and David Letcher opened a South Bend, Indiana bar called Club Shenanigans. In 1991, the two men decided to enter into a food service agreement with Macri. Under this agreement, Macri established a restaurant within Shenanigans called "Macri's" that sold food to bar patrons. In return, Shenanigans collected monthly rent plus a percentage of Macri's inside food sales. Business was never good for Macri's, however, and by the end of 1992, its food sales had declined dramatically. Shenanigans was also in poor financial condition, although there was evidence that by 1992 the bar was finally turning a profit. In any event, Moore and Letcher, like Macri, were chronically late with their insurance and rent payments and had drawn very meager salaries over the years. Despite this dismal financial situation, however. Moore and Letcher increased Shenanigans' 1992 fire insurance coverage from $30,000 to $121,000. Then, on December 28, 1992, Shenanigans burned to the ground. The local authorities determined that arson was the cause of the fire, and Macri was arrested.
 
 
 4
 At trial, the government introduced evidence supporting its theory that Macri deliberately set fire to Shenanigans and Macri's. Among other things, the government showed that Macri was in dire financial straits; that he repeatedly threatened to set fire to or otherwise destroy both businesses, that on the night of the fire he failed to activate the alarm system for the first time since its installation, that he had removed some of his personal effects from the restaurant shortly before the fire; and that he was never timely with his insurance payments except for his December 1992 payment, which was made six days before the fire In his defense, Macri attempted to show that Ron Moore had a motive to burn down the businesses. Among other things, Macri argued that Moore was also in great financial debt; that Shenanigans had been unprofitable for many years; that it was highly unusual for the bar to be closed on a Sunday during the holiday and football season, as it was at the time of the fire, that Moore was an experienced fireman who knew how to start a fire without causing injury to himself; that Moore had increased Shenanigans' fire insurance that same year, and that a witness who had passed by Shenanigans and Macri's shortly before the fire saw a person meeting Moore's physical description.
 
 
 5
 At the close of trial, the jury acquitted Macri of the arson charge but convicted him of both counts of mail fraud. The district court then sentenced Macri to 42 months' imprisonment on each of the mail fraud counts, to be served concurrently, and imposed a $10,000 fine. In arriving at this sentence, the court concluded that the government had shown by a preponderance of the evidence that Macri had set the fire to Shenanigans and Macri's. Accordingly, the district court held Macri responsible for the full amount of the fire loss and increased to seventeen Macri's base offense level of six. See 17 U.S.S.G. §§ 2F1.1(a), (b)(1)(L). The court also enhanced Macri's offense level by two levels for engaging in conduct involving the risk of serious bodily, as well as by two more levels for engaging in conduct involving more than minimal planning. See 17 U.S.S.G. §§ 2F1.1(b)(2)(a), (b)(4)(A)
 
 
 6
 Macri first argues on appeal that the clear and convincing standard should be applied in sentencing guideline cases involving a defendant acquitted of conduct the court wishes to rely on for sentencing purposes, Alternatively, Macri urges this court to follow the lead of United States v. Kikumura, 918 F.2d 1084 (3rd Cir.1990), in which the Third Circuit held that a stricter standard of proof is required in cases where relevant conduct evidence used at the sentencing phase results in a dramatic increase in the defendant's sentence. Neither argument is persuasive.
 
 
 7
 First, it is well established in this circuit "that simply a preponderance of the evidence is all that is required for a factual finding tinder the Sentencing Guidelines." United States v. Porter, 23 F.3d 1274, 1277 (7th Cir.1994); see also United States v. Booker, 115 F.3d 442, 443 (7th Cir.1997). "Nothing in the Guidelines or the Constitution prevents a judge from taking account of conduct in which the defendant engaged, whether or not an acquittal prevents the imposition of criminal penalties directly on that conduct." United States v. Welch, 945 F.2d 1378, 1385 (7th Cir.1991) (citations omitted). It therefore follows that the preponderance standard applies to all relevant conduct, regardless of whether the government was able to establish the defendant's culpability beyond a reasonable doubt. See United States v. Jones, 54 F.3d 1284, 1294 (7th Cir.), cert. denied, 116 S.Ct. 263 (1995).
 
 
 8
 Second, while this court implicitly has agreed with Kikumura "to the extent that due process considerations may, at some point, require a greater showing for a dramatic increase [of a defendant's sentence]," this court has yet to address when that point is reached. United States v. Rodriguez, 67 F.3d 1312, 1322 (7th Cir.1995), cert. denied, 116 S.Ct. 1582 (1996). See also United States v. Masters, 978 F 2d 281, 285-87 (7th Cir.1992) (affirming increase of defendant's sentence from 33-41 months to consecutive 20-year terms). In this case, Macri's total sentence is 42 months, which is hardly a sentence that constitutes that rare case where "the magnitude of the contemplated departure is sufficiently great that the sentencing hearing can fairly be characterized as 'a tail which wags the dog of the substantive offense.' " United States v. Schuster, 948 F.2d 313,315 (7th Cir.1991) (quoting Kikumura, 918 F.2d at 1101).
 
 
 9
 Next, Macri suggests that he cannot be acquitted of arson while simultaneously found guilty of mail fraud based on the theory that he sought insurance proceeds for a fire he had caused. Our legal system does not require consistency of verdicts, however, as indicated in United States v. Walker, 9 F.3d 1245, 1248 (7th Cir. 1 993)
 
 
 10
 Finally, Macri challenges the sufficiency of the evidence supporting the district court's decision to include the arson offense as relevant conduct. He contends that the evidence was insufficient for the court to conclude, even under a preponderance of the evidence standard, that he set fire to the businesses. In support, Macri draws our attention to the same issues he raised at trial. This court reviews a district court's factual findings with great deference, reversing only for clear error. Porter, 23 F.3d at 1278. Also entitled to great deference is the sentencing judge's determination regarding the credibility of witnesses See United States v. Kozinski, 16 F.3d 795, 820 (7th Cir.1994). In this case the district court did not clearly err when it found, by a preponderance of the evidence, that Macri either set fire to Shenanigans and Macri's or caused another person to do so. See United States v. Zaragoza, 117 F.3d 342, 344 (7th Cir.1997). The court conducted a thorough sentencing hearing at which it evaluated the evidence presented at trial, including the testimony of numerous witnesses. The court noted that although the evidence was not entirely one-sided, the timing of the fire weighed against the likelihood that either Letcher or Moore caused the fire. Accordingly, the court was within its discretion in concluding that Macri more likely than not caused the fire.
 
 
 11
 The judgment of the district court is AFFIRMED.