*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0045P (6th Cir.)
File Name: 02a0045p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*                                                   No. 00-1917

WILLIS MICHAEL GEORGIA,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 00-00054—Gordon J. Quist, District Judge.

Submitted: October 26, 2001

Decided and Filed: February 1, 2002

Before: BOGGS, GILMAN, and BRIGHT,[*] Circuit Judges.

———————————

### COUNSEL

**ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellant. Joan E. Meyer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

———————————

[*]The Honorable Myron H. Bright, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

GILMAN, J., delivered the opinion of the court, in which BRIGHT, J., joined. BOGGS, J. (pp. 14-15), delivered a separate dissenting opinion.

─────────────────

**OPINION**

─────────────────

RONALD LEE GILMAN, Circuit Judge. On April 21, 2000, Willis Michael Georgia was charged with setting fire to a church as part of a conspiracy to collect on the insurance policy covering the building. Georgia pled guilty to the charge. The government objected to the presentence investigation report, which recommended a base offense level of 20. A base offense level of 24, the government argued, was more appropriate because Georgia had "created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly . . . ." U.S. Sentencing Guidelines Manual § 2K1.4(a)(1)(A). After sustaining the government's objection, the district court sentenced Georgia to 78 months in prison. Georgia appeals, claiming that the district court's application of the sentencing enhancement is clearly erroneous. For the reasons set forth below, we **VACATE** Georgia's sentence and **REMAND** for resentencing consistent with this opinion.

## I.  BACKGROUND

### A.  Factual background

On December 9, 1999, at 1:24 a.m., the Benton Harbor Fire Department, a full-time, professional department, responded to a fire at the Liberty Center Temple of Deliverance (the church) in Benton Harbor, Michigan. The firefighters broke a window to provide a vent for the smoke and proceeded to enter the building. After walking approximately five feet into the church, the firefighters quickly exited because of the size of the fire. Less than ten minutes later, part of the church's

reasonably confident that the firemen in question did not feel quite as sanguine about the risk as does the court. Because the risk of bodily injury in this case was substantial compared to the general run of arson (even if not compared to the general run of arson of moderate-sized commercial-type structures), I would affirm the judgment of the district court. I therefore respectfully **DISSENT**.

---

### DISSENT

---

BOGGS, Circuit Judge, dissenting.  This is a close and difficult case, but I must disagree with the conclusion of my colleagues that the district court clearly erred in finding that Mr. Georgia "knowingly created a substantial risk of death or bodily injury" in this case.  The court correctly points out that the risk in this case was probably less than in the large majority of cases where this enhancement was litigated at the appellate level and upheld.  On the other hand, the court cites no cases, and I have been unable to find any, where an application of this enhancement was reversed in circumstances comparable to this degree of danger.

As the Guidelines point out (§ 2K1.4, n.2), the risk must be "something more than simply responding to the fire."  It seems to me that this case does involve more than simply responding to any fire (which would include, for example, leaf fires, outhouses, isolated shacks, etc.).

The court correctly emphasizes that the professionalism of the firemen ameliorated the degree of risk, but in my opinion this does not by itself mean that the risk was not still substantial.  When firemen respond to a fire in a significant public structure such as a church, even if it is isolated and unused at the time, the risk to the firemen from structural collapse is, by its nature, substantial.  Georgia had done construction work at the church, and had been paid to burn the church by the pastor.  There is thus little question that he knew of the nature of the church's construction and of the heavy structures on the roof.

On balance, it simply seems to me that it was not clear error to say that this degree of danger was indeed "a substantial risk . . . of bodily injury."  While that degree of risk may not have been unusual for a fire in a commercial-type structure that a professional fire department would respond to, I am

roof collapsed.  None of the firefighters were injured in the fire.

Although the church was constructed primarily of brick and cinder blocks, its roof was built with wood beams and rafters.  Two commercial heating, ventilating, and air conditioning (HVAC) units rested on the flat roof.  These HVAC units were approximately six to eight feet long, four to six feet wide, and two to four feet deep.  A unit this size is heavy enough to crush a person if it were to fall.  When part of the roof collapsed, one of the HVAC units indeed fell to the floor of the church, although no one was injured.

Investigators discovered that the fire had ten separate and distinct points of origin.  A point of origin, according to the government's expert witness, is a place where the "ignition source, the heat, the energy, and the fuel come together to start [a] fire."  Several of the points of origin were electrical outlets that were stuffed with fiber material.  Although these outlets ignited, they quickly self-extinguished.  Other points of origin were paper fires in the pastor's office.  An accelerant was used in only one of the ten different points of origin.  The part of the roof that collapsed was over the area where the accelerant was used.

Georgia had performed construction work at the church in August of 1999, but he quit when he was not paid.  During the investigation of the fire, Georgia was interviewed.  He eventually admitted that the pastor of the church, Michael Robinson, had offered him $5,000 to burn down the church, and that he had agreed to set the fire.

### B.   Procedural background

On April 21, 2000, Georgia was charged with setting fire to the church as part of a conspiracy to collect the insurance proceeds, in violation of 18 U.S.C. §§ 371, 844(h)(1), and 1341.  Georgia pled guilty to the charge.

The presentence investigation report concluded that a base offense level of 20 was appropriate under United States

Sentencing Guidelines § 2K1.4(a)(2). An objection to the report was filed by the government, which argued that an enhanced base offense level of 24 pursuant to United States Sentencing Guidelines § 2K1.4(a)(1)(A) was more appropriate under the circumstances. After hearing the testimony of a special agent with the Bureau of Alcohol, Tobacco and Firearms, the district court sustained the government's objection and used a base offense level of 24 in sentencing Georgia to 78 months in prison.

## II.  ANALYSIS

### A.  Standard of review

Georgia argues that the district court erred in sentencing him pursuant to United States Sentencing Guidelines § 2K1.4(a)(1)(A). This Guideline sets the base offense level at 24 if the fire "created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly . . . ." "[A] trial court's determination that a defendant knowingly created a substantial risk of death or serious bodily injury is a finding of fact that will not be disturbed unless clearly erroneous." *United States v. Robert Lee Johnson*, 116 F.3d 163, 165 (6th Cir. 1997) (internal quotation marks omitted) (affirming the sentence of a defendant under United States Sentencing Guidelines § 2K1.4(a)(1)(A), because the fires he set in multiple buildings on a windy day stretched the resources of the volunteer fire department that responded to the fires); *see U.S. v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997) ("Hence, the key inquiry is whether [the defendant] 'knowingly' created a substantial risk of death or bodily injury. This is a factual finding that this court reviews for clear error.").

Although *Robert Lee Johnson* and *Latouf* state that a trial court's determination "that a defendant knowingly created a substantial risk of death or serious bodily injury" is a finding of fact, there is a distinction between underlying findings of fact and the application of those facts to a particular United States Sentencing Guideline. The determination that a defendant knowingly created a substantial risk of injury as set

First, these were professional firefighters who were presumably aware that "one of the common causes for fire-fighter death in fighting fires is structural collapse." It is therefore reasonable to presume that the firefighters would have avoided such a common risk in the manner they did—by quickly evacuating the building when they saw the extent of the fire.

Moreover, as discussed above, even if the professional firefighters had failed to anticipate the risk, the likelihood of a HVAC unit falling on one of them was still very unlikely given the large square footage of the church in comparison to the relatively small size of the HVAC units. The conclusion that Georgia was "practically certain" that his conduct would "create[] a substantial risk of death or severe injury" is therefore untenable.

## III.  CONCLUSION

For all of the reasons set forth above, we **VACATE** Georgia's sentence and **REMAND** for resentencing consistent with this opinion.

that factor, we would, in all likelihood, not have had only a fire, but either serious injury or death.

The district court had already explained its reasoning:

> It seems common sense to me that if you have a fire that is undermining the roof, burning the roof and undermining the structural soundness with those units on there—and I don't know what they weigh; but they probably weigh, if not a ton, maybe a half ton—that you would know that those things would come crashing through the roof and hit firemen that are underneath it. That's common sense.

Contrary to the district court's conclusions, this fire did not have any of the attributes that are commonly relied on to justify a determination that an arsonist "knowingly created a substantial risk of death or serious bodily injury." Courts are generally warranted in applying this Guideline to cases involving bombs or large amounts of gasoline, because it is likely that a defendant would be "aware that it is practically certain" that the resulting explosion will "create[] a substantial risk of death or serious bodily injury." Similarly, one who sets a fire in the proximity of a residence will usually be "aware that it is practically certain" that his or her action will "create[] a substantial risk of death or serious bodily injury." Although we are not saying that these conditions are the only ones that will justify the application of United States Sentencing Guidelines § 2K1.4(1)(A), we are saying that a comparable set of conditions must be present to properly trigger the enhancement. In our opinion, the present case does not exhibit any equivalent exacerbating circumstances.

The district court commented that "if [Georgia] had been alert and if he had been using common sense, the common sense of an ordinary person, [he] would be practically certain that those units would collapse on anyone that was in the building," and that "[i]t is fortuitous" that none of the firefighters were injured. But, as noted above, the actual likelihood of a HVAC unit falling on a firefighter was, contrary to the district court's conjecture, extremely remote.

forth in Guidelines § 2K1.4(a)(1)(A) is a mixed question of law and fact, and, as such, it is subject to de novo review. *United States v. Middleton*, 246 F.3d 825, 844 (6th Cir. 2001) ("A district court's application of the facts to the Sentencing Guidelines is a mixed question of law and fact that we review de novo."); *see United States v. McDonald*, 165 F.3d 1032, 1034 (6th Cir. 1999) ("[A] district court's determination of whether the facts constitute an obstruction of justice [under United States Sentencing Guidelines § 3C1.1] is a mixed question of law and fact that is reviewed *de novo*."); *United States v. Kushmaul*, 147 F.3d 498, 500 (6th Cir. 1998) (holding that whether the facts before it constituted "the brandishing of a weapon" under United States Sentencing Guidelines § 2B3.1(b) was a legal question to be reviewed de novo).

*Robert Lee Johnson* relies primarily on *United States v. Honeycutt*, 8 F.3d 785, 787 (11th Cir. 1993), to support the proposition that a "clearly erroneous" standard of review should be applied. *Robert Lee Johnson*, 116 F.3d at 165. In *Honeycutt*, the Eleven Circuit adopted the clearly erroneous standard of review without providing any explanation beyond a citation to a footnote in *United States v. Scroggins*, 880 F.2d 1204, 1206 n.5 (11th Cir. 1989). *Scroggins*, however, does not support the proposition that a clearly erroneous standard of review should be applied in determining whether United States Sentencing Guidelines § 2K1.4(a)(1) has been properly applied. To the contrary, *Scroggins* explains why a determination of this sort is a mixed question of law and fact: "[A] defendant can question whether a given set of facts, as found by the district court, triggers the application of a particular guideline. Such a challenge presents a mixed question of law and fact for appellate review." *Scroggins*, 880 F.2d at 1205 n.5. *Scroggins* clearly distinguishes this situation from cases where a defendant claims that the district court made erroneous findings of fact, "and as a consequence applied the guidelines incorrectly." *Id*. Challenges of that type "present the reviewing court with a pure question of fact." *Id*.

Similarly, *Latouf* does not provide persuasive authority for its declaration that a trial court's determination that a defendant knowingly created a substantial risk of death or serious bodily injury "is a factual finding that this court reviews for clear error." *Latouf*, 132 F.3d at 331. Although *Latouf* cites *United States v. Turner*, 995 F.2d 1357 (6th Cir. 1993), in support of this proposition, *Turner* applied a "due deference" standard "to the district court's application of the guidelines to the facts." *Id*. at 1365. The *Turner* court clearly distinguishes this "due deference" standard from a clearly erroneous standard. *Id*. ("Giving due deference to the district court's application of the guideline and reviewing its findings of fact under a clearly erroneous standard, Turner's final assignment of error must fail.")

This court has employed a two-step analysis in reviewing whether United States Sentencing Guidelines § 2K1.4(a)(1)(A) is applicable. First, we examine the district court's conclusion that the the "defendant's actions created a substantial risk of death or serious bodily injury." *Robert Lee Johnson*, 116 F.3d at 165. We then examine the evidence supporting the conclusion that the risk was created "knowingly." *Id*. at 166. Although we believe that the application of United States Sentencing Guidelines § 2K1.4(a)(1)(A) involves a mixed question of law and fact, we will employ a clearly erroneous standard in accordance with the quoted language from *Robert Lee Johnson* and *Latouf*.

## B.  Substantial risk of injury

In considering whether a fire "created a substantial risk of death or serious bodily injury to any person other than a participant in the offense," the courts "have declined to develop any clear litmus test . . . ; instead, they have generally adopted a case-by-case approach which requires assessment of all relevant factors . . . ." *Robert Lee Johnson*, 116 F.3d at 165. The "risk to fire fighters and other emergency and law enforcement personnel who respond to" a fire can be considered, U.S. Sentencing Guidelines Manual § 2K1.4, cmt.

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
(ii) if the element involves a result of his conduct, *he is aware that it is practically certain that his conduct will cause such a result*.

Model Penal Code § 2.022(2)(b) (emphasis added); *see Robert Lee Johnson*, 116 F.3d at 166 ("The Model Penal Code's definition of the culpable mental state of knowledge as 'practically certain' that conduct will cause a certain result tends to track the accepted understanding of the term as it is used in the context of criminal law.").

The district court properly employed the Model Penal Code's definition in assessing whether Georgia "knowingly" created a substantial risk to the firefighters:

The risk was created knowingly, in my judgment, because—and I do accept the—I think the Sixth Circuit doesn't quite say it. It accepts that the model penal code, the mental state being practically certain that conduct would cause a certain result, tends to track the accepted understanding of the term as it is used in the context of criminal law.

Utilizing this standard, the district court then concluded that Georgia knowingly created the risk of a firefighter being injured if the HVAC units fell through the roof:

And I would say that the defendant if he had been alert and if he had been using common sense, the common sense of an ordinary person, [he] would be practically certain that those units would collapse on anyone that was in the building.

It is fortuitous. I don't know why the firemen left the building ten minutes before the collapse. But it could have been pure fortuity. Apparently, from the heat, but it wasn't for fear of the units collapsing on them. But for

extent." *Robert Lee Johnson*, 116 F.3d at 165 n.2. It is also undeniable that a large percentage of buildings have wooden roofs. Furthermore, as the district court acknowledged, HVAC units are commonly placed on, or hung from, the roofs of nonresidential buildings. The combination of these factors is therefore unlikely to have posed a risk to firefighters that was beyond the risks normally associated with responding to a typical fire.

Moreover, according to the government's expert witness, "one of the common causes for fire-fighter death in fighting fires is structural collapse." The professional firefighters who responded to this fire were thus presumably aware of the risk that the HVAC units posed and took appropriate safety measures. Even if the firefighters did not take precautions to avoid this hazard, the actual risk that a falling HVAC unit would injure a firefighter does not appear to be "substantial." The bottom surface area of each HVAC unit was approximately 35 square feet. Although the surface area of the church is not in the record, we can safely assume that the building contained at least 3,500 square feet, given that two commercial HVAC units were used for climate control. The HVAC unit that fell would thus have occupied no more than one percent of the surface area of the church, making the likelihood of being injured from the falling unit quite small.

For all of these reasons, we set aside as clearly erroneous the district court's determination that Georgia "created a substantial risk of death or serious bodily injury" within the meaning of § 2K1.4(a)(1)(A).

## C. Risk created knowingly

Because the United States Sentencing Guidelines do not define the term "knowingly," this court has looked to the Model Penal Code for assistance. *Robert Lee Johnson*, 116 F.3d at 166. The Model Penal Code states that

[a] person acts knowingly with respect to a material element of an offense when:

---

n.2, but *"that risk must include something more than simply responding to the fire*. If it did not, then virtually every fire would merit application of the higher base offense level of section 2K1.4(a)(1)." *Brian L. Johnson*, 152 F.3d 553, 556 (6th Cir. 1998) (emphasis added). Instead, "the arsonist must know that a specific fire for some reason poses a substantial risk of death or serious bodily injury to fire fighters and emergency personnel who may respond." *Id*. at 557 (quoting *United States v. Honeycutt*, 8 F.3d 785, 787-88 (11th Cir. 1993)); *see United States v. Turner*, 995 F.2d 1357, 1365 (6th Cir. 1993) (concluding that the trial court's determination that setting a fire "in weather conditions that would make extinguishing the fire extremely difficult" created a substantial risk of injury to firefighters was not clearly erroneous, at least where residents of an adjacent residence were also placed at risk).

The district court focused on the risk of injury to firefighters who responded to the church fire. In particular, the court determined that a substantial risk was created because of the two heavy HVAC units resting on the wooden roof of the church:

And in my judgment, this particular offense created a substantial risk of death or serious bodily injury to the fire fighters. . . .
I make that finding based on the following really undisputed points of evidence:
First of all, an accelerant was used.
Second, an accelerant was used directly under a wooden roof.
Third, there was a wooden roof supported by wooden trusses, apparently. Not apparently. Supported by wooden trusses, so it was all wood up above there. It wasn't steel or anything else that would take awhile to burn.
And [fourth], two heavy H-VAC units were on the roof. That means, in my judgment, that any weakening of that structure—quite frankly, it doesn't have to burn through. It just has to weaken. I had a major case on that as a

judge and, quite frankly, as a lawyer. Just if you get it weakened with fire, these units, whether they're hung inside the building . . . or placed on top of a building . . . creates [sic] a tremendous danger to the fire fighters who happen to go into the building who might not know, by the way, about the units on top of the building when they're there.

The district court had already explained why it determined that this situation created a greater than normal risk for the firefighters who responded to the fire:

[I]t seems to me, too, that if you have a wooden frame roof on a building, even though the walls may be made of concrete block or cinder block, and you have those heavy units on top of that roof, it would create a very, very dangerous situation which you might not have in every fire.

Contrary to the conclusion of the district court, however, this fire did not have any of the attributes that are commonly relied on by appellate courts to justify a determination that a defendant knowingly "created a substantial risk of death or serious bodily injury." It was set at a time—1:24 a.m.—when the risk of personal injury would be minimal. There is also no evidence that anyone lived in the church. Nearly all of the cases where an appellate court has affirmed the application of United States Sentencing Guidelines § 2K1.4(a)(1)(A) have involved one or both of the following two clearly exacerbating circumstances: (1) the risk of a large explosion, or (2) the presence of nearby residences. *See United States v. Brian L. Johnson*, 152 F.3d 553, 557 (6th Cir. 1998) (fire started in a car parked near a parsonage); *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997) (arson of a building next to gas station); *United States v. Turner*, 995 F.2d 1357, 1365 (6th Cir. 1993) (fire jeopardized the safety of people sleeping in an adjacent dwelling); *United States v. Abed*, No. 98-4637, 2000 WL 14190, at *14 (4th Cir. Jan. 10, 2000) (unpublished table decision) (arson of a car dealership near apartment complexes); *United States v. Vearyeak*, No. 98-

50230, 1999 WL 669427, at *2 (9th Cir. Aug. 27, 1999) (unpublished table decision) (fire started in a restaurant that was close to apartment buildings); *United States v. Marji*, 158 F.3d 60, 64 (2d Cir. 1998) (defendant set fire to a flower shop below occupied apartments); *United States v. Zaragoza*, 117 F.3d 342, 345 (7th Cir. 1997) (fire started with 35 gallons of gasoline in an urban area); *United States v. Beyer*, 106 F.3d 175, 180 (7th Cir. 1997) (defendant used "a tremendous amount of accelerant" to set fire to a building that was 50 yards away from two apartments and across the street from a rectory); *United States v. Altier*, 91 F.3d 953, 956 (7th Cir. 1996) (defendant set fire to a car dealership); *United States v. DiSanto*, 86 F.3d 1238, 1255-56 (1st Cir. 1996) (large amount of gasoline used to start a fire); *United States v. Ram*, No. 94–1583, 1996 WL 107261, at *3 (2d Cir. Mar. 8, 1996) (unpublished table decision) (fire set on the ground floor of a six-story apartment building); *United States v. Honeycutt*, 8 F.3d 785, 787-88 (11th Cir. 1993) (fire started by throwing a Molotov cocktail into an automobile repair shop); *United States v. Karlic*, 997 F.2d 564, 568 (9th Cir. 1993) (fire jeopardized people in neighboring residences); *United States v. Bos*, 917 F.2d 1178, 1182 (9th Cir. 1990) (fire started by explosive device caused risk of injury to pedestrians); *cf. United States v. Robert Lee Johnson*, 116 F.3d 163 (6th Cir. 1997) (fires set in multiple buildings on a windy day stretched the resources of a volunteer, as opposed to a professional, fire department that responded to the fires).

Unlike the vast majority of cases where an appellate court has affirmed the application of United States Sentencing Guidelines § 2K1.4(a)(1)(A), the present case involved neither the risk of a large explosion nor the presence of any nearby residences. Instead, the district court based its conclusion that the church fire in question "create[d] a very, very dangerous situation which you might not have in every fire" on three findings of fact: (1) Georgia used an accelerant, (2) the church had an all-wood roof, and (3) two HVAC units were on the roof. But all of these factors are relatively commonplace. This court has already noted that "virtually every instance of arson includes use of accelerants to some