**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jeffrey John BALGOOYEN,**
**Defendant–Appellant.**

**No. 01–2170.**

United States Court of Appeals,
Sixth Circuit.

June 19, 2002.

---

Before SILER and MOORE, Circuit Judges; and STAFFORD,* District Judge.

## OPINION

MOORE, Circuit Judge.

Defendant–Appellant Jeffrey John Balgooyen pleaded guilty to one count of conspiracy to distribute one hundred kilograms or more of marijuana and was sentenced to forty-one months' imprisonment and five years' supervised release. He now appeals the district court's application of a two-level sentencing enhancement for use of a "special skill" pursuant to United States Sentencing Guideline § 3B1.3. For the following reasons, we VACATE Balgooyen's sentence and REMAND for resentencing.

## I. BACKGROUND

Jeffrey John Balgooyen ("Balgooyen") was an attorney in Grand Rapids, Michigan. In May, 2000, Balgooyen's car was pulled over in Arizona by a patrolman with the Arizona Department of Public Safety. Following an alert by a drug-detecting dog, the patrolman searched the trunk of Balgooyen's car and found over seventy-five kilograms of marijuana. Balgooyen was arrested, and he subsequently cooperated with the police. On March 29, 2001, a grand jury in the United States District Court for the Western District of Michigan issued an indictment against two of Balgooyen's co-conspirators, and on April 24, 2001, the same grand jury issued a superseding indictment against Balgooyen and seven co-conspirators. The superseding indictment charged Balgooyen with one count of conspiracy to distribute over one hundred kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1). In addition, the superseding indictment included a forfeiture count against Balgooyen and his co-conspirators pursuant to 21 U.S.C. § 853.

On April 24, 2001, Balgooyen pleaded guilty to the conspiracy count. In the plea agreement, the parties stipulated that a drug quantity of 76.2 kilograms of marijuana should be used in calculating Balgooyen's base offense level. A probation officer prepared a presentence investigation report ("PSR"), calculating Balgooyen's base offense level at 22. The PSR then recommended a two-level enhancement for use of a "special skill" pursuant to United States Sentencing Guideline ("U.S.S.G.") § 3B1.3, a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and a one-level reduction for timely notification of a guilty plea pursuant to U.S.S.G. § 3E1.1(b). In regard to the two-level enhancement for use of a "special skill," the PSR stated:

> Mr. Balgooyen, as an attorney, used his skills in a manner that significantly facilitated this conspiracy by the laundering and concealment of drug proceeds. He drafted and witnessed quit claim deed(s) transferring ownership of 910 Underhill, Grand Rapids, Michigan, from Mr. Elmer to Mr. Austin in satisfaction of a drug debt. He instructed his wife to notarize this transaction. He processed

---

* The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

other quit claim deeds. In order to prepare quit claim deeds for another person, the preparer must be licensed by the state. To do so without a license would be the unauthorized practice of law.

Joint Appendix ("J.A.") at 91(PSR). Finally, the PSR recommended that Balgooyen's criminal history established a criminal history category of III.

Balgooyen and the government both filed objections to the PSR. Balgooyen objected, in pertinent part, to the two-level enhancement for use of a "special skill." He contended that: (1) the PSR derived its factual basis for the enhancement from information Balgooyen provided to the government in violation of U.S.S.G. § 1B1.8; and (2) no special skill is required to draft a quitclaim deed. J.A. at 109–112 (Def.'s Objections to PSR). On August 7, 2001, the district court held a sentencing hearing, at which the following exchange occurred regarding Balgooyen's objection to the two-level "special skill" enhancement:

MR. O'HARA: ... It is our position, Your Honor, that although it is true that Mr. Balgooyen was a lawyer and did prepare this quit claim deed—

THE COURT: He prepared it as a lawyer?

MR. O'HARA: Yes, he did, Your Honor.

THE COURT: Doesn't that answer the question?

...

MR. O'HARA: It's our position that that did not significantly facilitate the commission or concealment of the offense, and that's what we kind of focused in on in that the guideline speaks of a special skill which significantly facilitated the commission of the offense. It's our position that when Mr. Balgooyen prepared that quit claim deed, that it was recorded in the Kent County Regis-

ter of Deeds. It was not hidden. It was not difficult to detect. And Mr. Austin certainly could have had any other person who was a lawyer prepare the quit claim deed for himself for $30 or $35.

The Act of preparing the deed we contend did not significantly facilitate the commission of this offense. Mr. Austin, whatever he did for his own purposes and gain was his own doing. Mr. Balgooyen prepared a simple quit claim deed which was not hidden, which was openly recorded; and quite frankly, Mr. Austin could have gone to anyone else, including preparing the deed himself. So it is our position that 3B1.3 does not apply because even though Mr. Balgooyen was a lawyer and prepared the quit claim deed, that act alone did not significantly contribute to the facilitation of the commission of this offense.

THE COURT: I'm going to overrule the objection. Mr. Balgooyen acted as a lawyer when he prepared the deed. Now, whether or not other persons could have done that is not the issue. He was acting as a lawyer.

Mr. Underhill, co-defendant, co-conspirator in the larger enterprise, the purpose of preparing the deed was to transfer laundered monies used in the purchase of it....

J.A. at 74A–75 (Sentencing Hearing Tr.). On August 8, 2001, the district court sentenced Balgooyen to forty-one months' imprisonment and five years' supervised release. The court adopted the factual findings and guideline application in the PSR, except the court found that Balgooyen's criminal history category was II instead of III. Balgooyen timely appeals.

## II. ANALYSIS

On appeal, Balgooyen challenges only the district court's application of the two-

level enhancement for use of a "special skill" pursuant to U.S.S.G. § 3B1.3. Balgooyen's offense level was calculated at 21, which results in a sentencing range of forty-one to fifty-one months; without the enhancement, Balgooyen's offense level would be calculated at 19, which results in a sentencing range of thirty-three to forty-one months. We review the district court's interpretation of the Sentencing Guidelines de novo, and we review the district court's findings of fact at sentencing for clear error. *United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir. 2002). "A district court's application of the facts to the Sentencing Guidelines is a mixed question of law and fact that we review de novo." *United States v. Georgia*, 279 F.3d 384, 386 (6th Cir.2002) (quoting *United States v. Middleton*, 246 F.3d 825, 844 (6th Cir.2001)).

U.S.S.G. § 3B1.3 provides that: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." The Commentary to the guideline explains that " '[s]pecial skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3 commentary, applic. note 3. Because Balgooyen as a lawyer cannot contend that he does not have a special skill, he can only argue on appeal that he did not use his special skill "in a manner that significantly facilitated the commission or concealment of the offense."

Balgooyen argues on appeal that his preparation of the quitclaim deed as a lawyer could not have significantly facilitated the commission or concealment of the offense because other persons—real estate agents and title companies, for instance—are also able to prepare quitclaim deeds. Balgooyen also argues that "[t]here is no evidence in the record that the simple act of preparing a quit claim deed by Defendant–Appellant significantly facilitated the commission or concealment of the offense." Appellant's Br. at 10. We have held that "[a]pplication of the enhancement under § 3B1.3 for use of a special skill requires only proof that the defendant's use of that skill makes it significantly easier for him to commit or conceal the crime." *United States v. Atkin*, 107 F.3d 1213, 1219–20 (6th Cir.1997) (quotation omitted); *see also United States v. White*, 270 F.3d 356, 373–74 (6th Cir.2001) (stating that "[t]he guidelines test was met in this case because Taylor's training and experience in water treatment plant operation made it significantly easier for her to falsify turbidity readings and to conceal the falsifications from the regulators"). Although the district court in this case found that Balgooyen prepared the quitclaim deed "as a lawyer," the court did not address whether Balgooyen's preparation of the deed as a lawyer significantly facilitated the commission or concealment of the marijuana distribution conspiracy.

It is *possible* that Balgooyen's use of his skill as lawyer in preparing the quitclaim deed significantly facilitated the commission or concealment of the offense. For instance, in a strikingly similar case, we held that a district court's finding that a defendant used his skill as an attorney to facilitate the commission or concealment of a conspiracy to distribute cocaine by preparing real estate papers was not clear error because:

> The district court found that the evidence proved defendant used his education and training to provide legal assistance surrounding the transfer of real estate, to influence Lonnie and Sally

Huff to commit perjury before the grand jury, and to help get Charles Sullivan, Jr., released from jail and noted that others were relying upon him for assistance because he was an attorney. *United Statess v. Ross,* 190 F.3d 446, 454 (6th Cir.), *cert. denied,* 528 U.S. 1033, 120 S.Ct. 559, 145 L.Ed.2d 434 (1999). Therefore, the mere fact that other persons can prepare quitclaim deeds does not demonstrate that Balgooyen's use of his skill as a lawyer in preparing the deed did not significantly facilitate the commission or concealment of his offense. However, in this case, the district court did not make *any* findings that Balgooyen's use of his skill as a lawyer in preparing the quitclaim deed significantly facilitated the commission or concealment of the conspiracy to distribute marijuana.

The district court did adopt the factual findings and guideline application in the PSR, which stated that Balgooyen "used his skill as a lawyer to facilitate the laundering of drug proceeds by drafting a quit claim deed for 910 Underhill, Grand Rapids, Michigan, which was owned by Roger Elmer but transferred to Mr. Austin to satisfy a drug debt. Mr. Balgooyen had also previously split up properties owned by Mr. Austin and Patrick LaMasters that were purchased with Mr. Austin's drug proceeds." J.A. at 87(PSR). In addition, an addendum to the PSR stated that "[t]he transfer of land hid assets of this conspiracy, which facilitated the concealment of drug related funds." J.A. at 107 (Addendum to PSR). However, Federal Rule of Criminal Procedure 32(c)(1) provides that "[a]t the sentencing hearing ... [f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." We have interpreted Rule 32(c)(1) to prohibit "a court faced with a

dispute over sentencing factors from adopting the factual findings of the presentence report without making factual determinations of its own." *United States v. Parrott,* 148 F.3d 629 (6th Cir.1998) (quotation omitted). And we require "literal compliance" with this Rule. *United States v. Tackett,* 113 F.3d 603, 613–14 (6th Cir. 1997), *cert. denied,* 522 U.S. 1089, 118 S.Ct. 879, 139 L.Ed.2d 868 (1998); *see also United States v. Corrado,* 227 F.3d at 540–41 (6th Cir.2000). Balgooyen contested the application of the two-level "special skill" enhancement in his objections to the PSR, and, therefore, the district court was required to make independent findings of fact in regard to Balgooyen's use of a "special skill."

### III.   CONCLUSION

Because the district court did not make any independent findings of fact as to whether Balgooyen used his skill as a lawyer in a manner that significantly facilitated the commission or concealment of his offense, we VACATE Balgooyen's sentence and we REMAND for resentencing in accordance with Rule 32(c)(1) and this opinion.