RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0294P (6th Cir.)
File Name: 02a0294p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee/*
   *Cross-Appellant,*

  Nos. 01-1007/1128

 *v.*

SCOTT ALLEN STEVENS,
   *Defendant-Appellant/*
   *Cross-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 99-50096—Paul V. Gadola, District Judge.

Argued: April 30, 2002

Decided and Filed: August 29, 2002

Before: SILER and CLAY, Circuit Judges;
OBERDORFER, District Judge.

———————————

[*]The Honorable Louis F. Oberdorfer, United States District
Judge for the District of Columbia, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:**   Cynthia M. Law, Lansing, Michigan, for Appellant.   Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:**   Cynthia M. Law, Lansing, Michigan, for Appellant.   Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

**OPINION**

---

OBERDORFER, District Judge.   Scott Allen Stevens appeals from his conviction on eight counts of a twelve-count indictment for arson and related offenses.   He argues that the district court abused its discretion in admitting "other acts" evidence relating to prior fires for which Stevens had collected insurance proceeds pursuant to Fed. R. Evid. 404(b) and Fed. R. Evid. 403.

The government, in its cross-appeal, contends the district court erroneously sentenced Stevens under U.S.S.G. § 2K1.4(a)(2)(A), instead of U.S.S.G. § 2K1.4(a)(1)(A).   The latter mandates a higher base offense level for arsonists who "knowingly" create a substantial risk of death or bodily injury to others.   We affirm the district court's admission of "other acts" evidence and reverse and remand with instructions on the sentencing issue.

## I. Factual Background

In March 1995, Stevens purchased a commercial building located at 2323 South Saginaw Street in Flint, Michigan. South Saginaw Street is a busy street in a mixed-use neighborhood, with other commercial buildings adjacent, a funeral parlor next door, and at least one residence across the street.   The building had a rubber roof and contained a

restaurant, laundromat, and garage/warehouse space, where automobiles and drums of transmission fluid were stored. Stevens had difficulty renting the commercial space in the building, and as a consequence, had difficulty making his monthly mortgage payments. In addition, he was delinquent in his property taxes, owed money on his water and gas bills (in fact, the gas in the building was turned off due to his failure to pay), and owed money on the washers and dryers rented for the laundromat.

Later in 1995, Stevens approached at least three people with requests that they burn down the building. The first was David Watson, who rented the garage portion of the building for approximately six months beginning in late summer/early fall 1995. Watson testified that Stevens twice asked him to burn the building, the second time in the presence of Watson's girlfriend, suggesting to Watson that he could start the fire in the garage area, because the oil and transmission fluid there would quickly catch on fire and spread to the building's rubber roof. Watson also testified that Stevens offered to obtain the insurance in Watson's name, because Stevens had recently collected insurance proceeds on two different fires. He offered to pay Watson $75,000 of the anticipated $200,000 insurance proceeds if he started a fire. Watson declined the offer.

In his second attempt, in early 1996, Stevens approached Allen Hensley, who rented the restaurant and a shop in the rear of the building for a few months. As with Watson, Hensley testified that Stevens told him the garage area of the building would be the ideal place to set a fire to burn the building down. Hensley declined Stevens' suggestion that he start a fire in the building so that both of them could collect the insurance proceeds.

Finally, in October 1996, Stevens asked Thaddeus Troutt to burn the building down, offering him 10% of the insurance pay-out, which he told Troutt would be $30,000. Stevens assured Troutt that he would not get caught, because Stevens had previously burned down two buildings that he owned for

insurance money without getting into trouble with the authorities. Troutt considered the offer, but ultimately declined.

Meanwhile, in August 1996, Stevens obtained a $450,000 insurance policy on the building through Auto Owners Insurance. On November 4, 1996, he re-listed the property for sale. The next day, he hired a repairperson to clean the furnace and place a new cap on the chimney, and hired two other workers to install drywall in the restaurant area. Stevens left the building with the drywall contractors at approximately 7:00 P.M. The fire alarm went off at 7:35 P.M. When firefighters arrived at the scene a few minutes later, they confronted heavy smoke and flames throughout the building. Due to the building's rubber roof, the fire was most intense on the ceiling, causing plaster and tiles from the roof to fall on the firefighters. The fire was so intense that firefighters could stay in the building for only a few minutes. Firefighters on the roof had to leave because the rubber roof threatened to, and did indeed, collapse. One injured firefighter inside the building was dragged to safety minutes before the collapse occurred.

## II. Procedural History

Following an investigation, a grand jury returned a twelve-count indictment against Stevens on December 1, 1999. On August 21, 2000, the district court held a pre-trial hearing on defendant's motions to exclude evidence, including a motion to exclude evidence related to two previous fires for which Stevens had filed insurance claims. The district court found that the evidence was admissible, with its use by the jury limited to certain purposes, and that its probative value outweighed any potential prejudice to the defendant. *See* Fed. R. Evid. 404(b); 403.

Following an eight-day trial in August 2000, a jury convicted Stevens of eight counts: Count 1 (soliciting Watson to commit arson); Count 2 (soliciting Troutt to commit arson); Counts 7, 8, 9 and 10 (mail fraud in violation of 18 U.S.C. § 1341 for submitting false arson-related claims

injury to fire fighters and emergency personnel who may respond.") (internal quotation omitted) (emphasis added)).

Stevens plainly intended to burn the building to collect insurance. In addition, however, he knew that burning the building would create a heightened risk of death or injury to emergency personnel or innocent bystanders. The record shows that he was "aware" that the building had a rubber roof and sizable quantities of flammable and potentially explosive gasoline and transmission fluid were stored in the garage area, and that he was "practically certain" the combination of these two factors would cause any fire to spread rapidly throughout the building. He also knew that the building was located in a commercial district, with at least one residence in close proximity across the street. This satisfies the second requirement for sentencing under § 2K1.4(a)(1)(A).

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's admission of other acts evidence pursuant to Fed. R. Evid. 404(b) and 403, but VACATE the sentence and REMAND to the district court with instructions to re-sentence defendant under U.S.S.G. § 2K1.4(a)(1)(A).

rubber and was likely to burn more quickly and intensely than the standard fire-resistant roof. He also knew that there were drums of transmission fluid and automobiles (presumably with gasoline in their tanks) stored in the warehouse, and that transmission fluid and gasoline are explosive fire accelerants. Indeed, he highlighted these facts to Watson and Hensley when soliciting them to commit arson. In addition, he knew that the building was located on a busy commercial street traveled by pedestrians and other passerbys with at least one residence located in the vicinity of the building. There may also have been a heightened risk of injury to pedestrians and passerbys due to the time of the fire – 7:30 in the evening – and the busy, commercial nature of South Saginaw Street. *Cf. Georgia*, 279 F.3d at 388 (risk of personal injury was "minimal" in a fire set at a vacant church at 1:24 A.M.). All of these factors support a finding that "defendant's actions created a substantial risk of death or serious bodily injury." *Id.* at 387.

As to the second prong of *Georgia's* analysis, the district court sentenced Stevens under U.S.S.G. § 2K1.4(a)(1)(A) because "there is not a preponderance of the evidence to show Mr. Stevens had knowledge or intent to harm others or other buildings around his own. Mr. Stevens' felonious intent in this matter was to collect insurance monies by burning his building." J.A. at 72. This statement confirms our impression that the district court did not sufficiently distinguish between "knowingly" and "intentionally." The standard for "knowledge" under § 2K1.4(a)(1)(A) employed in this Circuit, drawn from the Model Penal Code, defines "knowingly" to require that a defendant be "'practically certain' that conduct will cause a certain result." *United States v. Robert Lee Johnson*, 116 F.3d 163, 166 (6th Cir. 1997) (quoting Model Penal Code § 2.022(2)(b)). Or as the *Johnson* court put it in other words, a defendant should be sentenced under the higher base offense level only if he "was aware of the factors that elevated the degree of risk." *Robert Lee Johnson*, 116 F.3d at 166. *See also Brian L. Johnson*, 152 F.2d at 557 ("[T]he arsonist *must know* that a specific fire for some reason poses a substantial risk of death or serious

to his insurance company); Count 11 (arson in violation of 18 U.S.C. § 844(i)); and Count 12 (use of fire to commit mail fraud in violation of 18 U.S.C. § 844(h)(1)). The jury acquitted him of Counts 3, 4, 5, and 6, for mail fraud related to his insurance claims for a September 1996 break-in and vandalism at the restaurant.

On December 7, 2000, the district court imposed a 51-month concurrent sentence on Counts 1-2 and 7-11 with a consecutive mandatory minimum 60-month sentence on Count 12. The court built the 51-month sentence on a base offense level of 20 pursuant to U.S.S.G. § 2K1.4(a)(2)(A). It rejected the government's recommendation of a base offense level of 24, which would have yielded a sentencing range of 63-78 months if the district court had found that Stevens, pursuant to U.S.S.G. § 2K1.4(a)(1)(A), "*knowingly ...* created a substantial risk of death or serious bodily injury" to persons other than himself. *Id.* (emphasis added).[1]

Stevens filed a timely notice of appeal on December 15, 2000. The government filed a timely cross-appeal of Stevens' sentence on January 11, 2001.

### III.  Analysis

### A.  Admission of Other Acts Evidence

Following the August 21, 2000 hearing on Stevens' motion in limine to exclude "other acts" evidence, the district court

---

[1]Section 2K1.4, which governs arson, states in relevant part (emphasis added; bold type in original):

(a)      Base Offense Level (apply the Greatest)
        (1)      **24**, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, *and that risk was created knowingly*; ...
        (2)      **20**, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense; ...

ruled admissible "to establish motive, intent, plan, preparation, knowledge and absence of mistake or accident" Stevens' statements that he had paid others to set two earlier fires for which he had received insurance reimbursements. Joint Appendix ("J.A.") at 63; *see also* Fed. R. Evid. 404(b). The district court later instructed the jury that it should use this evidence only "in deciding the defendant's intent, motive, knowledge, and whether the fire was an accident." J.A. at 391.

On appeal, defendant disputes that the evidence about his involvement in two previous fires was admissible for any reason other than to establish intent. He also challenges the other acts evidence as more prejudicial than probative. The government contends the "other acts" evidence is admissible extrinsic evidence, or, in the alternative, is evidence intrinsic to the solicitation charges,[2] and is not unduly prejudicial.

This Circuit employs a three-step process to review a district court's decision to admit evidence of prior acts. *See United States v. Gessa*, 971 F.2d 1257, 1261-62 (6th Cir. 1992) (en banc). First, the factual determination that a prior act occurred is reviewed for clear error. *See United States v. Timothy Moses Johnson*, 27 F.3d 1186, 1190 (6th Cir. 1994). For the second and third steps – the district court's determination whether the evidence of other acts is presented for a legitimate purpose and whether its probative value outweighs potential prejudice to the defendant – we review for abuse of discretion. *See id.*; *see also United States v. Mack*, 258 F.3d 548, 553, n.1 (6th Cir. 2001). Stevens does

---

[2]For the first time on appeal, the government raises the argument that evidence of Stevens' involvement in past fires to collect insurance proceeds, in addition to being admissible extrinsic evidence under Rule 404(b), is also independently admissible as intrinsic evidence.

The argument is not compelling. The two earlier fires were set at different locations, relied on different perpetrators, and resulted in claims to different insurance companies than the acts giving rise to the current indictment. We are not persuaded that they are "inextricably intertwined" with the arson charged in the indictment. *See United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995).

As to the first prong, the district court found that the fire was "exceedingly intense" and agreed "with the Government's position that Mr. Stevens' acts placed emergency personnel and surrounding dwellings in danger." J.A. at 71, 72. However, the district court applied the lower sentencing guideline because "2K1.4(a)(2) takes that very same matter into consideration." *Id.* at 72. In order for the risk to fire fighters and other emergency and law enforcement personnel to warrant application of § 2K1.4(a)(1), "that risk must include *something more* than simply responding to the fire." *United States v. Brian L. Johnson*, 152 F.3d 553, 556 (6th Cir. 1998) (emphasis added). On the record before us, it is not clear whether the district court sentenced Stevens under the lower base offense level because he believed the danger to emergency personnel and surrounding dwellings did not pose a sufficiently substantial risk under the guidelines, or because he believed Stevens lacked the requisite knowledge of that risk.

The intervening decision of this Circuit in *Georgia* examined several arson cases and distilled from them two circumstances which commonly (but not exclusively) warrant imposition of the higher base level: "Nearly all of the cases where an appellate court has affirmed the application of United States Sentencing Guideline § 2K1.4(a)(1)(A) have involved one or both of the following two clearly exacerbating circumstances: (1) the risk of a large explosion, or (2) the presence of nearby residences." *Georgia*, 279 F.3d at 388. Although the district court referred to the risk to firefighters, it did not address whether the quickly and intensely burning rubber roof, the storage of inflammable and possibly explosive liquids in the South Saginaw Street building, or the presence of nearby residences and people on the street constituted "something more," justifying imposition of the higher base offense level.

The record indicates that this is not a case where the arsonist merely knew that firefighters would likely respond, but was unaware of any risk-heightening circumstances. Stevens knew, for example, that the building's roof was

## B. Base Level for Sentencing

In its cross-appeal, the government argues that the district court erred in calculating defendant's sentence under U.S.S.G. § 2K1.4(a)(2)(A), yielding a lower base offense level and less prison time than U.S.S.G. § 2K1.4(a)(1)(A). The latter sentencing provision provides for a higher base offense level for a defendant who "knowingly" creates a substantial risk of death or injury to innocent persons.

At the threshold of the sentencing matter, the parties dispute the appropriate standard of review. The United States claims that interpretation of the "knowingly" requirement in the relevant sentencing guideline is subject to de novo review as a question of law, while Stevens claims the district court's decision to accept the lower base level recommended in the pre-sentence report must be reviewed only for clear error.

The Sixth Circuit recently addressed this issue in a case involving the same provision of the Sentencing Guidelines. *See United States v. Georgia*, 279 F.3d 384 (6th Cir. 2002).[5] The *Georgia* court, although expressing some doubt on the subject, adhered to earlier Sixth Circuit precedents holding that a district court's application of the Sentencing Guidelines is subject to only clear error review. *See id.* at 386. Informed by *Georgia*, we conclude that the application of § 2K1.4(a)(2)(A) was clearly erroneous.

This Circuit uses a two-prong test to review a district court's sentencing determinations in an arson case: "First, we examine the district court's conclusion that the defendant's actions created a substantial risk of death or serious bodily injury. We then examine the evidence supporting the conclusion that the risk was created knowingly." *Georgia*, 279 F.3d at 387.

---

[5]That case was decided after the district court had sentenced Stevens, without the benefit of the *Georgia* opinion.

not dispute that he told others he had set fire to two other buildings in order to collect insurance money.

### 1. *Admission for Legitimate or Illegitimate Purposes*

Without citing any legal authority, defendant claims that admission of this evidence for reasons in addition to intent was plain error. The standard for establishing plain error is stringent. "Plain errors are limited to those harmful ones so rank that they should have been apparent to the trial judge without objection, or that strike at fundamental fairness, honesty, or public reputation of the trial." *United States v. Murphy*, 241 F.3d 447, 451 (6th Cir. 2001) (internal citation and quotation omitted).

Where a single, legitimate purpose supports the admission of the evidence under Rule 404(b), a trial court's admission of that evidence for additional reasons allowed under the rule does not constitute plain error. *See Timothy Moses Johnson*, 27 F. 3d at 1194. As in that case, it is sufficient that the district court's instruction included "intent." *See also United States v. Ward*, 190 F.3d 483, 490 (6th Cir. 1999) ("Here, the court's instruction was certainly error, but since there was no objection to this part of the instruction, the prior conviction was admissible for at least one of the purposes recited by the district court, and we decline to exercise our discretion to find 'plain error.'").

Unlike the trial court in *Ward*, which was "certainly" in error, *see id.*, it is not apparent that the district court here plainly erred in admitting evidence of prior fires for purposes of establishing, in addition to intent, "motive, knowledge, and whether the fire was an accident." J.A. at 391. The district court made specific findings that the evidence of other acts was admissible to show intent and that the November 1996 fire "was not an accident or mistake, [but] was intentionally set by the defendant." *Id.* at 62. In view of the foregoing, it was unnecessary for the district court and unnecessary for us to determine whether the other acts evidence was probative of motive or knowledge in the jury trial on the issue of innocence or guilt.

## 2. *Prejudicial Effect*

Rule 403 authorizes exclusion of otherwise admissible Rule 404(b) evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Stevens, relying on the four-factor test stated in *United States v. Brown*, 147 F.3d 477 (6th Cir. 1998),[3] argues that, even if the evidence were admissible under Rule 404(b), the district court abused its discretion in failing to suppress it as unfairly prejudicial within the meaning of Rule 403.

Although "it is preferable that the district court make explicit findings regarding the Rule 403 balancing," *United States v. Myers*, 123 F.3d 350, 363 (6th Cir. 1997), there is no requirement that the specific findings be tied to the *Brown* four-factor test.[4]

The district court, relying on controlling Sixth Circuit precedent, clearly found that the evidence was relevant and "not unfairly prejudicial to the defendant." J.A. at 63-64 (citing *United States v. Vance*, 871 F.2d 572 (6th Cir. 1989) and other cases). This finding satisfies us that the district court took the *Brown* factors into consideration when ruling. The district court's citation to Sixth Circuit precedents provides a shorthand, but sufficient, underpinning for its Rule 403 finding.

---

[3] Under *Brown*, the four relevant factors are (1) whether other acts evidence is unduly prejudicial; (2) if other means of proof are available; (3) when the other acts occurred; and (4) whether the district court gave a limiting instruction. *See* 147 F.3d at 483 (internal citation omitted).

[4] In *Myers*, for example, the following finding was considered to be sufficiently explicit: "In this case, the district court considered the balancing and concluded that '[t]here is nothing about any of these sales, I take it, that [is] particularly egregious [;] they're just other sales." 123 F.3d at 363 (citation omitted).

Stevens argues that the government had other means of proof, primarily through witnesses who testified he had solicited them to burn down the South Saginaw Street building. However, evidence of Stevens' participation in past fires was quite appropriate to anticipate and rebut potential defenses – for example, that he had been merely joking with those witnesses, or that the fire was set by a neighboring building owner, or was caused by the contractors at work in the building just before the fire broke out.

Although the district court did not make findings as to the proximity in time of the previous fires, it is apparent from the record that the first occurred in May 1992 and the second in May 1994, the series culminating in the November 1996 burning of the South Saginaw Street building. The series of fires in buildings owned by Stevens is highly probative evidence of defendant's intent – that he knew what he was doing, and did it on purpose. The 1994 fire, like the fire at the South Saginaw Street building, was purportedly caused by a repairperson, evidencing a modus operandi similar to his hiring contractors to install drywall on the date of the 1996 fire, thereby providing a plausible cause for an "accidental" fire. *See id.* Given the relatively short period of time between the earlier fires, as well as the similar circumstances surrounding the 1994 fire, the district court's failure to reiterate the obvious was no abuse of discretion.

Nor did the district court plainly err when it failed to repeat a limiting instruction each time "other acts" evidence was introduced. Suffice it to say that Stevens did not request such instruction and the total circumstances here render any error harmless. A "poorly timed, albeit appropriate, limiting instruction" is harmless error so long as it does not "materially affect the verdict ... in light of all the other evidence presented." *United States v. Latouf*, 132 F. 3d 320, 329 (6th Cir. 1998). Stevens is not entitled to a new trial on this basis.