**UNITED STATES of America**
**Plaintiff–Appellee,**

v.

**David K. PERSINGER Defendant–**
**Appellant.**

**No. 02–1477.**

United States Court of Appeals,
Sixth Circuit.

Nov. 24, 2003.

Patricia G. Gaedeke, Wayne F. Pratt, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

Richard M. Helfrick, Nancy L. McGunn, Federal Public Defenders Office, Detroit, MI, for Defendant–Appellant.

Before BATCHELDER and ROGERS, Circuit Judges; and RUSSELL, District Judge.*

RUSSELL, District Judge.

Mr. David Persinger was convicted by a jury on two counts of aiding and abetting the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846. Mr. Persinger was sentenced to forty-one months of jail time on each count, with sentences to run concurrently. Mr. Persinger now appeals his conviction and sentences, asserting that the district court made three errors when it (1) allowed the United States to introduce testimony regarding a 1993 narcotic charge and failed to give the jury a limiting instruction regarding that testimony; (2) allowed DEA Agent William Johnson to testify as both a fact and expert witness and failed to give the jury an instruction as to the two differ-

* Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

ent parts of his testimony; and (3) concluded that it lacked authority to consider an imperfect entrapment defense as a basis for a downward departure.

## BACKGROUND

Between January and April, 2001, Mr. Persinger twice sold cocaine to Agent Johnson, and to a confidential informant, "Ted." On the basis of these sales, Mr. Persinger was indicted on two counts of aiding and abetting the distribution of a controlled substance, and one count of conspiracy to distribute a controlled substance. Mr. Persinger admitted that he made two cocaine sales, but asserted an entrapment defense, arguing that Ted used intimidation and manipulation to get him to make the sales.

Prior to trial, the district court considered various evidentiary issues; primary among them was the admissibility of a March 2, 1993 state charge against Mr. Persinger relating to cocaine. The United States sought to use the 1993 charge, of which Mr. Persinger had been acquitted, to show preexisting propensity to engage in drug trafficking activity and thus rebut Mr. Persinger's entrapment defense. Mr. Persinger's counsel argued that the 1993 charge was too remote in time from the offense in question. The district court concluded that the United States could elicit testimony from Persinger regarding the 1993 charge. Persinger's counsel then lodged a standing objection, based on his earlier arguments, to eliminate disruptions at trial. The district court recognized this continuing objection.

At trial, Mr. Persinger took the stand to advance his entrapment defense. On cross-examination, he admitted processing cocaine into "crack" at least twice, but stressed that those instances had been over ten years earlier. When pressed on this time frame, Mr. Persinger stated that he unsure of the exact date he last processed cocaine into crack. Later on, he had the following exchange with the prosecutor:

Q: You made some reference earlier in your testimony that you hadn't done anything in the last ten years, sir. But isn't it true that you did, in fact, have contact with cocaine approximately less than ten years ago?

A: No.

Q: Resulting—isn't it true that [your contact with cocaine] resulted in a charge in state court? Is that correct?

A: In less than ten years ago?

Q: Yes.

A: My arrest? No.

Q: Yes. Sir, wasn't that matter disposed of on or about March of 1993?

A: It may have been the disposition of the case, yes. My arrest was June 13th of 1991.

Q: And you possessed cocaine on that occasion?

A: I did not actually possess it, no.

Q: You were familiar with it?

A: Correct.

Q: Not denying here that you are very familiar with cocaine?

A: I was in the past and the knowledge did not leave me, no.

Mr. Persinger's counsel did not lodge an objection regarding the form of the prosecutor's inquiry during this exchange, but later, on re-direct, had Mr. Persinger testify that he had been acquitted of the charge referenced.

Agent Johnson also testified at Mr. Persinger's trial. He gave factual testimony regarding his experiences in buying cocaine from Mr. Persinger, as well as other information surrounding the alleged cocaine sales. During the course of Agent

Johnson's testimony, he also provided a foundation for the introduction of recorded telephone conversations between Mr. Persinger and "Ted." In addition to offering this factual testimony, Agent Johnson also offered opinion testimony on a number of drug-related topics, including the common practices and vocabulary of drug dealers, the processing of cocaine into crack, and the price of cocaine in the Detroit area. Mr. Persinger's counsel did not object to the inclusion of opinion testimony with fact testimony, nor did he request a limiting instruction to inform the jury about the different types of testimony Agent Johnson provided.

The record reflects that the trial court consulted with counsel in chambers on the morning before he instructed the jury. Both counsel stated for the record that they had no objections to the court's proposed jury instructions. The court did not give a limiting instruction explaining the proper use of the earlier 1993 charge—i.e., as evidence of propensity or as impeachment—nor did it explain to the jury the distinction nature of Agent Johnson's testimony—i.e., the inclusion of both fact and opinion testimony. At the conclusion of the instructions, both counsel stated again that they did not have any objection to the court's instructions. The jury returned a verdict convicting Mr. Persinger on all counts.

Prior to the sentencing hearing, Mr. Persinger filed a motion for downward departure based on the theory of "imperfect entrapment." At the sentencing hearing, the district court declined to downward depart, stating, "I do not believe that the – that the imperfect entrapment, though a plausible theory, is applicable here." The court then sentenced Mr. Persinger to forty-one months incarceration. Mr. Persinger now makes a timely appeal to this court.

## ANALYSIS

We consider in turn Mr. Persinger's three allegations of error on the district court's part: (1) the treatment of the 1993 state drug charge; (2) the treatment of Agent Johnson's testimony; and (3) the district court's denial of the request for downward departure.

### I. The 1993 State Court Drug Charge

Mr. Persinger argues that the district court erred by admitting evidence of the 1993 charge pursuant to Federal Rule of Evidence 404(b) and by failing to issue a limiting instruction.

When a defendant asserts entrapment as a defense to a criminal charge, "the prosecution is not circumscribed ... by the usual rules against the introduction of character evidence or evidence of prior [bad] acts," *United States v. Ambrose*, 483 F.2d 742, 748 (6th Cir.1973), and may "make a searching inquiry." *Id.* On the other hand, this:

does not thereby provide a license for the prosecution to roam at will through his past, either by the introduction of extrinsic evidence or by the use of cross-examination. The Government is constrained by familiar rules of relevancy and competency, by policies against undue prejudice or unfair surprise, and by considerations pertaining to limitation of the range of issues with which juries must grapple, the trial judge's ability to control the conduct of the trial, and the confinement of cross-examination to matters raised on direct.

*Ambrose*, 483 F.2d at 748. Thus, propensity evidence may be excluded because it is too remote in time from the offense charged, because of its potential for undue prejudice, or because of its unreliability. *Id.* Mr. Persinger claims that the admission of the evidence of the 1993 charge was

error for each of these reasons. He also alleges that the district court erred by not requiring the prosecution to introduce evidence of the circumstances surrounding the 1993 charge.

We employ a three part test to review the admissibility of evidence submitted under Rule 404(b). *United States v. Stevens*, 303 F.3d 711, 716 (6th Cir.2002). First, we examine whether the court below clearly erred in determining as a matter of fact that there is sufficient evidence the prior act occurred. *Id.* The prosecution only used the disputed evidence to show that Mr. Persinger had "contact" with cocaine and was "familiar" with it. The district court did not make a clearly erroneous determination that these facts existed.

Second, we must decide whether the district court abused its discretion in determining whether the prior act was admissible under Rule 404(b). *Stevens*, 303 F.3d at 715–16. We conclude that it did not. The time that elapsed between the earlier charge and the acts at issue here does not eliminate the former's value as propensity evidence. *See United States v. Bastanipour*, 41 F.3d 1178, 1182–83 (7th Cir.1994); *United States v. Walther*, 867 F.2d 1334, 1342–43 (11th Cir.1989). This circuit has recognized that "[t]here is no absolute maximum number of years that may separate a prior act and the offense charged." *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir.1985). Also, the district court did not abuse its discretion when it concluded that the earlier act was "substantially similar" to the crime in question here. *See United States v. Blankenship*, 775 F.2d 735, 739–40 (6th Cir.1985).

Third, we must evaluate whether the district court abused its discretion in balancing the probative value and potential for prejudice from the evidence in question. *Stevens*, 303 F.3d at 715–16. Mr.

Persinger asserts that the district court failed to undertake this balancing, but the record reveals that the court did make reference to Federal Rule of Evidence 403 and excluded other evidence of prior conduct because it was more prejudicial than probative. This circuit does not require district courts to utter any "magic words" tying their Rule 403 analysis to the four factors outlined in *United States v. Brown*, 147 F.3d 477, 483 (6th Cir.1998), although it is desirable that district courts do so. *See United States v. Myers*, 123 F.3d 350, 363 (6th Cir.1997).

The four *Brown* factors are: (1) whether the evidence creates undue prejudice; (2) whether other means of proof are available; (3) when the prior acts occurred; and (4) whether the district court gave a proper limiting instruction. 147 F.3d at 483. We have already determined that the district court did not abuse its discretion regarding the issue of when the acts occurred. This leaves us to consider the intertwined questions of whether there was undue prejudice and alternative means of proof available, as well as the district court's failure to provide a limiting instruction.

■ The earlier charge became fair game when Mr. Persinger asserted an entrapment defense, for doing so expands the sorts of evidence available to the prosecution. In cases like this one, "[a] defense of entrapment is often countered by evidence of other crimes and wrongs in order to show the defendant's predisposition to commit the offense or offenses charged." *Blakenship*, 775 F.2d at 739. Also, the prosecution used the earlier charge in the course of its cross-examination of Mr. Persinger, but did not emphasize it at any other point in the trial. Under these circumstances the district court did not abuse its discretion in determining that the evidence did not create an

undue prejudice and was unique enough to warrant inclusion.

■ We must next consider the district court's failure to provide a limiting instruction regarding the earlier charge. We begin by noting that a "plain error" analysis applies to this failure because Mr. Persinger did not object to the instructions when given the opportunity to do. *See e.g., United States v. Rogers*, 118 F.3d 466, 471 (6th Cir.1997). Here, the district court's error was not plain, it did not result in substantial prejudice, and there is no indication that a "miscarriage of justice" resulted. *See id.* at 473. Therefore, the error, if one in fact existed, does not meet the requirements for reversal set forth in Federal Rule of Criminal Procedure 52(b).

## II. Agent Johnson's Testimony

Mr. Persinger contends that the district court erred by failing to instruct the jury that Agent Johnson testified as both factual and expert witness. Like the Rule 404(b) limiting instruction, however, Mr. Persinger did not object to the district court's failure to provide such an instruction. Therefore, plain error analysis applies. *See Rogers*, 118 F.3d at 471.

■ This circuit has previously declined to absolutely prohibit the practice of having a law enforcement officer offer both factual and opinion testimony. *See United States v. Thomas*, 74 F.3d 676, 682 (6th Cir.1996), *abrog. on other grounds recognized, Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500 (6th Cir.1998). There are, however, potential pitfalls that courts must guard against in such situations. *Id.* at 682–83. Jury members might be predisposed to find the factual testimony more credible than they otherwise would. To counter this problem, "both the district court and the prosecutor should take care to assure that the jury is informed of the dual roles of a law enforcement officer as a fact witness and an expert witness, so that the jury can give proper weight to each type of testimony." *Id.* at 683. When the jury has been instructed regarding the two types of testimony and the proper method of evaluating each, no prejudice results.

In this case, Mr. Persinger asserts that the district court's failure to instruct the jury about the differing forms of Agent Johnson's testimony unduly prejudiced his case. He also argues that here there was no separation between Agent Johnson's factual testimony and his opinion testimony, making it more likely that the jurors were confused about the proper way to evaluate Agent Johnson's testimony. If this lack of separation did confuse the jury, Mr. Persinger argues that the potential for prejudice is significant given the large role Agent Johnson's testimony played in bolstering the prosecution's case.

Here, however, there is no evidence of undue prejudice from Agent Johnson's dual role. Notably, neither the district court nor the parties treated Agent Johnson with the deference normally accorded experts. Nor is it clear that Agent Johnson's "expert" testimony involved any disputed questions of facts. Even if the failure to give proper instruction was plain error, however, and even if there was substantial prejudice, Mr. Persinger has not demonstrated that a miscarriage of justice resulted. *See Rogers*, 118 F.3d at 473 ("discretion to reverse because of plain error should be exercised only 'in those circumstances in which a miscarriage of justice would otherwise result' [and only in those situations where] the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' ") (citations omitted).

## III. Downward Departure for an "Imperfect Entrapment" Defense

Mr. Persinger's final assertion of error is that the district court improperly con-

cluded that it did not have the authority to consider a downward departure based on an "imperfect entrapment" defense. We disagree.

A district court's discretionary refusal to depart downward is generally not subject to appeal unless the district court mistakenly believed it did not have the legal authority to depart downward. *United States v. Rudolph*, 190 F.3d 720, 722 (6th Cir.1999). A district court's belief that it lacked the authority for a downward departure under the sentencing guidelines is reviewed for abuse of discretion. *United States v. Camejo*, 333 F.3d 669 (6th Cir. 2003). The district court's decision that a factor is categorically proscribed is, however, a purely legal decision to which we owe no deference because courts "by definition abuse [their] discretion when [they make] an error of law." *Id.* at 676 (citations omitted).

"[T]he sentencing judge is under no duty to 'state affirmatively that he knows he possesses the power to make a downward departure, but declines to do so,' and [a panel] 'should be reluctant to treat as ambiguous a ruling which does not' include such an affirmative declaration." *United States v. Farrow*, 198 F.3d 179, 200 (6th Cir.1999) (quoting *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir.1995)). The sentencing judge is presumed to know the extent of judicial discretion under the guidelines, absent clear evidence in the record to the contrary. *United States v. Crouch*, 288 F.3d 907, 910 (6th Cir.2002); *see also Byrd*, 53 F.3d at 145 ("[I]t should be assumed that the court, in the exercise of its discretion, found downward departure unwarranted.")(quotations and citations omitted). *But see United States v. Strickland*, 144 F.3d 412, 418 (6th Cir. 1998) (stating that the record must make it clear that the district court was aware of its power to depart downward).

A number of courts have considered "imperfect entrapment" as a basis for departing downward. *See, e.g., United States v. McClelland*, 72 F.3d 717, 724–25 (9th Cir.1995); *United States v. Garza–Juarez*, 992 F.2d 896, 912 (9th Cir.1991); *see also United States v. Coleman*, 188 F.3d 354, 358 n. 3 (6th Cir.1999)(discussing cases that have dealt with "downward departures ... where the government has induced a defendant to commit a crime, but the defense of entrapment is not warranted"). These courts have found that where the prosecution aggressively encourages wrongdoing or unduly pressures an individual to commit a crime, a departure may be warranted based on U.S.S.C. § 5K2.12, even when the prosecution's conduct does not give rise to a complete defense. *McClelland*, 72 F.3d at 725; *Garza–Juarez*, 992 F.2d at 912.

Here, the district court stated:

As I listened to Mr. Persinger's testimony, it was my view presumably, though I'm not certain it was shared by the jury, that Mr. Persinger did have the intent to commit the act with which he was convicted. I do not believe that the – that the imperfect entrapment, though a plausible theory, is applicable here. Mr. Persinger relied on the entrapment defense, the jury did not accept that as a basis for acquitting him of the charge. I can't say with any reasonable conviction that had the jury – strike that – had the jury not been the trier of fact that I would have acquitted Mr. Persinger on that basis.

I believe that he's not entitled to the imperfect entrapment defense, although it may be applicable in other cases, and therefore, I will deny the – the request to consider the – the imperfect entrapment defense as a basis for downward departure.

Mr. Persinger argues that this soliloquy reveals that the district court thought it lacked the authority to downward depart based on an "imperfect entrapment" defense. It does not. What the district court's statements indicate is that while the defense was valid, it was inapplicable based on the facts of this case. As the court noted at sentencing, it was not "satisfied that the Government agent with whom Mr. Persinger had contact did anything to persuade him to do an act in a criminal activity."

## CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Persinger's conviction.