NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0392n.06

No. 24-5602

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 06, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) ) | COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| TANNER M. ABBOTT, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: BATCHELDER, CLAY, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Tanner Abbott, a former police deputy, was convicted of willfully depriving several individuals of their right to be free from unreasonable searches and seizures and of falsifying arrest documents to conceal his conduct. He now appeals. *First*, Abbott argues that the district court erred in concluding that the offenses charged in the indictment were properly joined under Federal Rule of Criminal Procedure 8(a). *Second*, Abbott contends that even if the offenses were properly joined, the district court should have granted his motion to sever them because joinder of the charges would unduly prejudice him at trial. *Third*, Abbott argues that the district court erred in admitting evidence of his prior acts under Federal Rule of Evidence 404(b). We disagree with all three arguments and affirm Abbott's conviction.

**BACKGROUND**

Tanner Abbott was a deputy with the Boyle County Sheriff's Office in Danville, Kentucky until he was terminated in September 2021. In 2023, a federal grand jury indicted him on seven

counts related to his use of excessive force and other illegal conduct while acting as a sheriff's deputy during four separate incidents between January and April 2021.

Count 1 of the indictment related to Abbott's use of force while arresting J.C. in April 2021. Specifically, Count 1 alleged that Abbott "punched J.C. in the head without legal justification," thereby willfully depriving J.C. of the right to be free from a law enforcement officer's use of unreasonable force during an arrest, in violation of 18 U.S.C. § 242. Superseding Indictment, R. 28, PageID 125.

Counts 2 and 3 related to Abbott's arrest of W.W. in February 2021. Count 2 alleged that, as with J.C., Abbott had "punched W.W. in the head without legal justification" while arresting him and thus willfully deprived W.W. of the right to be free from an officer's use of unreasonable force during an arrest, in violation of 18 U.S.C. § 242. *Id.* at PageID 126. In Count 3, the indictment alleged that after using unreasonable force against W.W., Abbott directed a co-conspirator to fraudulently fill out an arrest report. Abbott directed the co-conspirator to assert falsely that, while being arrested, W.W. "advanced toward [Abbott] aggressively," even though nothing of the sort had occurred. *Id.* Count 3 accordingly charged Abbott with conspiring with another person to "knowingly falsify and make a false entry in a record and document, with the intent to impede, obstruct, and influence the investigation" of the matter, in violation of 18 U.S.C. § 1519 and 18 U.S.C. § 371. *Id.* at PageID 126–27.

Counts 4, 5, and 6 all related to Abbott's interaction with B.T. in March 2021. The indictment stated that Abbott illegally searched a hotel room occupied by B.T.—that is, without a search warrant or other justification—and then arrested B.T. While doing so, Abbott "caused B.T.'s head and body to forcibly collide with a wall, without lawful justification." *Id.* at PageID 129. Later, Abbott fraudulently stated in the arrest report that B.T. had given Abbott consent to

search his hotel room. Stemming from these allegations, Counts 4 and 6 charged Abbott with willfully depriving B.T. of the rights to be free from illegal searches and unreasonable force during an arrest, respectively. *See* 18 U.S.C. § 242. And Count 5 charged Abbott with knowingly falsifying a document with the intent to impede, obstruct, and influence an investigation, in violation of 18 U.S.C. § 1519.

Finally, Count 7 charged Abbott with willfully depriving two other individuals, D.N. and C.B., of the right to be free from unreasonable force during an arrest when he "punched and struck" them "without lawful justification." Superseding Indictment, R. 28, PageID 129; *see* 18 U.S.C § 242.

Before trial, Abbott filed a motion to sever the charges in the indictment into four separate trials—one for each of the incidents described above. He contended that the counts in the indictment were improperly joined under Federal Rule of Criminal Procedure 8(a) because the charged offenses involved four separate events, all of which occurred at different places, involved different victims, and otherwise lacked similarity. In the alternative, Abbott argued that, even if the counts were properly joined, the district court should nevertheless sever the charges under Rule 14(a) because joining them all in one trial would unduly prejudice Abbott.

The district court denied Abbott's motion. It first concluded that the offenses in the indictment were properly joined under Rule 8(a) because they were "of the same or similar character." Fed. R. Crim. P. 8(a). The district court then determined that it need not sever the charges because Abbott had failed to demonstrate that trying the charges together would unduly prejudice him.

Also before trial, the government filed a notice pursuant to Federal Rule of Evidence 404(b) of its intent to use evidence of Abbott's other wrongful conduct during arrests to prove that Abbott

had acted willfully with respect to the charged offenses. As relevant here, the government stated that it intended to use witness testimony about three of Abbott's wrongful actions that were not included in the indictment. *First*, J.C. would testify that several months before the incident charged in Count 1 of the indictment, Abbott used excessive force while arresting J.C. by slamming J.C.'s head into the pavement multiple times even though J.C. was not resisting arrest. *Second*, J.W., the brother of W.W., would testify about an interaction he had with Abbott several weeks before Abbott used excessive force on W.W., as alleged in Counts 2 and 3. The government proffered that J.W. would testify that Abbott pulled J.W. over and asked J.W. why he seemed nervous, to which J.W. responded that he was afraid of being shot. J.W., the government explained, would testify that Abbott then responded with something like, "Don't worry, I won't shoot you, I'll just beat your ass." Notice of Other Act Evid., R. 46, PageID 208. *Third*, B.T., the victim in Counts 4 and 6 of the indictment, would testify that he verbally insulted Abbott while he sat handcuffed in the back of Abbott's patrol car shortly after Abbott arrested him during the incident for which Abbott was charged. In response, Abbott deliberately accelerated his car to high speeds and then braked suddenly, causing B.T. to "lurch forward" and hit the bars in front of the car's back seat. *Id.* at PageID 209. The government contended that it would offer these three pieces of evidence to prove Abbott's intent to commit the charged acts.

Abbott filed a motion in limine to exclude the government's Rule 404(b) evidence. The district court denied the motion, reasoning that the government's other-act evidence was relevant to Abbott's willfulness with respect to the charged offenses and that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice to Abbott. *See* Fed. R. Evid. 403, 404(b)(2).

The case then proceeded to trial. The district court first had each of the government's proposed Rule 404(b) witnesses testify outside of the presence of jury so that the court could consider whether the witness's testimony was sufficiently reliable and was admissible for a permissible purpose. After hearing the testimony of J.C., J.W., and B.T., the district court concluded that the witnesses' testimony was both sufficiently reliable and admissible under Rule 404(b) because it was probative of Abbott's willfulness with respect to the charged offenses. These three witnesses then testified before the jury. After each testified, the district court gave the jury a limiting instruction, warning the jury that the witness's testimony could be considered only as evidence of Abbott's intent in committing the charged acts and that Abbott was on trial only for the charged acts.

The trial lasted five days. At both the close of his own evidence and the government's evidence, Abbott unsuccessfully moved for a judgment of acquittal. Abbott did not, however, reiterate his motion for severance.

The jury convicted Abbott of six of the seven counts—all but Count 6, which related to Abbott's use of force against B.T. The district court sentenced Abbott to 110 months of imprisonment.

Abbott timely appealed his criminal conviction.

## ANALYSIS

### I.     Joinder and Severance

Abbott argues on appeal that the offenses in the indictment were improperly joined under Rule 8(a) and that, even if the offenses were properly joined, the district court should have granted his motion to sever under Rule 14 because joinder unduly prejudiced him. We disagree on both fronts.

### A.    Joinder (Rule 8(a))

We turn first to Abbott's argument that the offenses in the indictment were improperly joined under Rule 8(a). Misjoinder under Rule 8(a) is a "question of law that we review de novo." *United States v. Deitz*, 577 F.3d 672, 692 (6th Cir. 2009).

Rule 8(a) provides that joinder of offenses is permissible if the offenses are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). We construe Rule 8(a) "in favor of joinder," *United States v. Cody*, 498 F.3d 582, 586 (6th Cir. 2007) (citation omitted), bearing in mind the "spirit of Rule 8(a), which is to 'promote the goals of trial convenience and judicial efficiency,'" *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006) (quoting *United States v. Wirsing*, 719 F.2d 859, 862 (6th Cir. 1983)). "Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment." *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002). Even if we determine that joinder was improper, that "does not end our inquiry"—we will reverse only if the misjoinder was not harmless. *Id.* at 461.

As the district court correctly concluded, the charges in the indictment were of a "same or similar character," and thus properly joined under Rule 8(a). Fed. R. Crim. P. 8(a). All counts in the indictment were "logically related," *Wirsing*, 719 F.2d at 863, in that they accused Abbott of having repeatedly engaged in the same general course of conduct—depriving individuals of their civil rights while effectuating arrests as a deputy sheriff and, in some instances, taking the further step of filing false documents to conceal his acts. We have previously upheld joinder under Rule 8(a)'s "same or similar character" prong when, as here, a defendant engaged in a similar course of conduct repeatedly. *See, e.g.*, *United States v. Rox*, 692 F.2d 453, 453–54 (6th Cir. 1984) (holding joinder of several counts of "making false statements on immigration documents" and "unlawfully

receiving money for services rendered as a congressional aide" was proper because all counts involved the defendant's abuse of an "official position to circumvent immigration laws"); *United States v. Harris*, 635 F.2d 526, 527 (6th Cir. 1980) (holding joinder of three offenses involving stealing U.S. mail at different times was permissible because "all counts involved interference with the mail"). That the counts in the indictment all pertained to Abbott's similar actions over a relatively short period—just three and a half months—also supports the appropriateness of joinder here. *See Hang Le-Thy Tran*, 433 F.3d at 477–78 (upholding joinder where two similar arson offenses were committed "within eighteen months of each other").

Joining the charges here also promoted "judicial efficiency." *Id.* at 478 (citation omitted). The face of the indictment suggested that the charges were likely to require "overlapping proof." *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001) (citation omitted). Abbott was charged with willfully violating individuals' civil rights, so evidence regarding his mental state was likely to be relevant at trial for multiple counts in the indictment. And the indictment charged Abbott with overstepping his authority as a police officer by using excessive force and by filing false documents. So evidence regarding the Boyle County Sheriff's Office's use-of-force and reporting policies—and Abbott's understanding of those policies—was likely to be relevant for several counts too. We accordingly hold that joinder was proper under Rule 8(a).

## B.    Severance (Rule 14)

We turn next to Abbott's related argument that the district court should have granted his motion to sever under Rule 14. Rule 14 provides that even when offenses are properly joined under Rule 8, the court may nonetheless "order separate trials of counts" if the joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). "The resolution of a Rule 14 motion is left to the sound discretion of the trial court and will not be disturbed" unless the

defendant makes a "showing of substantial prejudice," such as by demonstrating that joinder "compromise[d] a specific trial right or prevent[ed] the jury from making a reliable judgment about guilt or innocence." *Hang Le-Thy Tran*, 433 F.3d at 478.

Abbott's Rule 14 argument, too, fails. For starters, Abbott has failed to preserve this argument. We have long held that a defendant waives an argument for severance under Rule 14 if he does not renew his Rule 14 motion "following the close of the evidence at trial." *United States v. Sherrill*, 972 F.3d 752, 762 (6th Cir. 2020). Abbott did not do so.[1]

Even if Abbott had adequately preserved his Rule 14 severance argument, we would reject it. Abbott cannot make the "showing of substantial prejudice" required to demonstrate that the district court abused its discretion in denying Abbott's motion to sever. *Hang Le-Thy Tran*, 433 F.3d at 478 (citation omitted). For one thing, the district court gave careful limiting instructions to the jury concerning joinder and the need for the jury to consider the evidence separately as it relates to each charged offense. We have explained that careful jury instructions can help mitigate concerns that joinder caused substantial prejudice. *Cody*, 498 F.3d at 588. For another, the jury's verdict is itself evidence that Abbott was not prejudiced by the joinder: the jury acquitted Abbott of one of the seven counts with which he was charged, thereby suggesting that the jury was able to separate out the charges and weigh the relevant evidence for each separately. *See, e.g., Deitz*, 577 F.3d at 692 (reasoning that the jury's choice to acquit the defendant on a count demonstrated

---

[1] This court has taken different approaches to a defendant's failure to preserve a Rule 14 argument. In some cases, we have "declined to review the issue at all." *United States v. Sherrill*, 972 F.3d 752, 762 (6th Cir. 2020). In others, we have reviewed the issue only for plain error. *Id.* We assume without deciding that Abbott's argument is reviewable. We also need not decide the applicable standard of review because Abbott's argument fails even under the abuse-of-discretion standard that applies to a preserved Rule 14 challenge.

that the defendant was not prejudiced by the joinder); *United States v. Cope*, 312 F.3d 757, 781 (6th Cir. 2002) (same).

Accordingly, we hold that the district court did not abuse its discretion in denying Abbott's motion to sever under Rule 14.

## II.     Rule 404(b) Evidence

Abbott also argues that the district court erred in admitting evidence of his prior bad acts under Federal Rule of Evidence 404(b). That rule provides that evidence of "any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Put differently, evidence of a person's past acts may not be admitted to show that the person has a propensity to act a certain way. But there are some circumstances in which evidence of prior bad conduct may be admitted. *United States v. Dunnican*, 961 F.3d 859, 874 (6th Cir. 2020). Rule 404(b)(2) provides that evidence of a person's prior crime, wrong, or act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Still, admission of evidence for one of the reasons listed in Rule 404(b)(2) is subject to the requirements of Rule 403, under which relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

In deciding whether Rule 404(b) evidence is admissible, district courts must employ a "three-step process." *United States v. Carter*, 779 F.3d 623, 624 (6th Cir. 2015). They are required to determine whether (1) there is "sufficient evidence that the prior acts occurred"; (2) "the other act is admissible for one of the proper purposes outlined in the rule"; and (3) the evidence is admissible under Rule 403 because "the probative value of the evidence" is not "substantially

outweighed by the danger of unfair prejudice." *United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011).

Although we typically review a district court's evidentiary decisions for abuse of discretion, "there is an on-going dispute in this circuit concerning the proper standard of review of Rule 404(b) evidence." *Carter*, 779 F.3d at 625; *see also United States v. LaVictor*, 848 F.3d 428, 444–45 (6th Cir. 2017) (collecting and comparing cases). Some of our decisions have reviewed a district court's overall Rule 404(b) decision for abuse of discretion. *LaVictor*, 848 F.3d at 445. Others have employed a tiered standard of review, reviewing a district court's decision that there is sufficient evidence that a prior act took place for clear error, a district court's determination that evidence is admissible for a permissible purpose under Rule 404(b) de novo, and then a district court's decision to admit evidence in light of Rule 403 for abuse of discretion. *See id.* at 444. But the dispute regarding the proper standard of review is immaterial here, because even applying the tiered standard of review that is more favorable to Abbott, we would affirm the district court's challenged evidentiary decisions.

On appeal, Abbott challenges the district court's decision to admit testimony regarding his other acts by three witnesses: (1) J.C., who testified that Abbott slammed his head into the asphalt without provocation about ten months before the incident charged in Count 1; (2) J.W., who testified that Abbott told him he would beat him up after pulling him over and detaining him; and (3) B.T., who testified that after arresting him and placing him in the back of his patrol car, Abbott deliberately sped up and then slammed on the brakes so that B.T. was slammed forward. For each witness, the district court conducted the required three-step analysis for Rule 404(b) evidence and concluded that (1) there was "sufficient evidence" that the act occurred, (2) the evidence was admissible for a permissible purpose, and (3) the evidence was admissible under Rule 403. *Hardy*,

643 F.3d at 150. Abbott argues on appeal that the district court's decisions at every stage of the three-step test were erroneous. We disagree.

## A.      Sufficient Evidence That Other Acts Occurred

We turn first to the district court's determination that there was sufficient evidence that the three other acts occurred. To satisfy this step of the Rule 404(b) test, the government must present adequate evidence such that a jury could "reasonably conclude that the act occurred." *Huddleston v. United States*, 485 U.S. 681, 689 (1988); *see United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008). We hold that the district court did not clearly err in concluding that the government presented adequate evidence with respect to each of the three other acts Abbott challenges on appeal. Before allowing J.C., J.W., and B.T. to testify before the jury regarding Abbott's bad acts, the district court heard each witness's testimony outside of the jury's presence and carefully ascertained that there was an adequate factual basis upon which the jury could find the other bad acts occurred.

Abbott does not provide us persuasive reasons to question the district court's conclusion that the three witnesses provided an adequate factual basis for these other acts. Abbott generally contends that there was insufficient evidence for a jury to find that the three prior bad acts occurred because each witness's testimony was "uncorroborated." Appellant Br. at 25. But there is no rule that a witness's testimony must be corroborated to be believed. To the contrary, juries can make findings based on their view of whether a single eyewitness is credible. *Cf. Brown v. Davis*, 752 F.2d 1142, 1144 (6th Cir. 1985); *Willis v. Jones*, 329 F. App'x 7, 18 (6th Cir. 2009). Abbott also emphasizes that two of the witnesses, J.W. and B.T., were felons, which Abbott argues undermines their credibility. Similarly, Abbott notes that J.W. was W.W.'s brother and that B.T.'s testimony indicated that he wanted to "get even" with Abbott. Appellant Br. at 29. But it does not follow that

the testimony of J.W. and B.T. was so inherently unreliable that a jury could not hear the testimony and "reasonably conclude that the act[s]" about which J.W. and B.T. testified "occurred." *Huddleston*, 485 U.S. at 689; *see also United States v. Wilson*, 579 F. App'x 338, 344 (6th Cir. 2014) (noting that a defendant's argument that a witness was a "convicted felon" provided "no basis to set aside the jury's credibility determination[]"). In any event, Abbott was entitled to—and did—attempt to undermine the credibility of J.W. and B.T. on the grounds that they had a criminal record, *see* Fed. R. Evid. 609, or that they were biased in other ways.

### B.     Admissible for a Permissible Purpose

Next, we ask whether evidence regarding Abbott's three past acts was admissible for a permissible purpose. *See Hardy*, 643 F.3d at 150. Abbott argues that the challenged evidence did not have a permissible purpose. Instead, he contends, the evidence was admitted for the prohibited purpose of illustrating that he was a "bad man" and was accordingly more likely to have acted as such during the charged incidents. Appellant Br. at 25. We reject this argument. As the district court correctly held, testimony regarding Abbott's three past acts was admissible for a permissible purpose—showing Abbott's intent to commit the charged crimes.

To determine whether proposed other-acts evidence is admissible for a proper purpose, we must determine whether the evidence is "probative of a material issue other than character." *Bell*, 516 F.3d at 441 (citation omitted). This analysis involves a three-part inquiry. "Evidence of other acts is probative of a material issue other than character" when "(1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *Id.* at 441–42. We take each prong in turn.

*Offered for an admissible purpose*. Evidence of Abbott's prior acts was offered for the admissible purpose of showing Abbott's intent to commit the charged offenses. *See* Fed. R. Evid. 404(b)(2) (listing "intent" as a permissible purpose for admitting evidence of other acts). We have previously held that "the admission of other acts evidence is permitted to show intent when the defendant is charged with a crime containing a specific intent element." *LaVictor*, 848 F.3d at 446. Abbott was charged with specific intent crimes here. Five of the seven counts in the indictment charged Abbott with violating 18 U.S.C. § 242, which prohibits individuals acting under color of law from "willfully" subjecting individuals to "the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 18 U.S.C. § 242. To prove "the crime of deprivation of civil rights under § 242," the government must show that the defendant "had the specific intent" to deprive an individual "of a right under the Constitution." *United States v. Epley*, 52 F.3d 571, 576 (6th Cir. 1995). Evidence of Abbott's prior acts was accordingly offered for the admissible purpose of showing his specific intent to violate 18 U.S.C. § 242. *See LaVictor*, 848 F.3d at 446.

*Offered for a purpose that is material or in issue.* Having concluded that evidence of Abbott's prior acts was offered for the permissible purpose of showing Abbott's intent, we must assess whether intent was material to the case. It was. Abbott placed his specific intent at issue by raising defenses related to his mental state: for each count pertaining to his use of force against an individual he was arresting, he argued that the individual had provoked the attack, meaning that Abbott's use of force was justifiable and not a deliberate violation of the individual's civil rights, or that he did not in fact use more force than was necessary. The challenged evidence was permissible to counter these defenses.

*Probative of a permissible purpose.* Finally, we must determine whether the evidence of Abbott's three past acts was probative of the purpose for which it was admitted. "To determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is 'substantially similar and reasonably near in time' to the specific intent offense at issue." *Bell*, 516 F.3d at 443 (citation omitted); *see also United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018).

Applying these principles here, we conclude that Abbott's three past acts were probative of his intent. Abbott was charged with using unreasonable and unprovoked force against individuals during arrests. All three other acts were sufficiently similar to the conduct alleged in the indictment. *Bell*, 516 F.3d at 443. Two of the three prior acts the government sought to introduce evidence about were remarkably similar to the acts with which Abbott was charged. *See LaVictor*, 848 F.3d at 447. J.C. testified that after he was stopped by Abbott at the conclusion of a police car chase and Abbott opened J.C.'s car door, J.C. did not resist arrest and simply placed his hands behind his back. In response, Abbott "grabbed [his] head and started smacking it into the asphalt," even though J.C. was not "resisting at all." Tr., R. 117, PageID 1103. Similarly, B.T. testified that as he was riding in the back of Abbott's police patrol car while handcuffed after being arrested, Abbott deliberately sped up and then slammed on the brakes so that B.T. would "slide forward and hit [his] face against" the barrier between the front seats and back seats of the patrol car. Tr., R. 118, PageID 1417. Both of these prior acts show that in other instances, Abbott deliberately subjected individuals he was arresting to excessive force. In other words, the acts illustrate "that the defendant took similar actions in a similar situation," which "heighten[s]" the "probative value" of evidence regarding the acts. *Asher*, 910 F.3d at 860.

Unlike the first two, the third act at issue on appeal did not involve Abbott's actively inflicting violence against individuals he was arresting. Instead, J.W. testified that after Abbott pulled him over and J.W. told Abbott that he was afraid of being shot by the police, Abbott responded, "I'll beat your ass. You don't have to worry about that." Tr., R. 118, PageID 1165. On appeal, Abbott emphasizes that J.W. "was not the subject of unreasonable force" during this incident and thus that evidence regarding Abbott's statement to J.W. is not probative of Abbott's intent during the charged acts. Appellant Br. at 26–27. But the fact that Abbott did not actively use unreasonable force against J.W. during this incident is not dispositive. To be admissible under Rule 404(b), the prior act need not be "identical in every detail to the charged offense." *LaVictor*, 848 F.3d at 447 (citation omitted). This act was sufficiently similar to the charged offenses because it involved Abbott's threatening violence against an individual he had detained. A jury could reasonably interpret Abbott's unprovoked statement that he would "beat [J.W.'s] ass" as indicative of Abbott's intent to violate J.W.'s civil rights in a similar manner to the conduct alleged in the charged offenses. Tr., R. 118, PageID 1165. As we have previously reasoned, "[e]vidence showing that a defendant formed a particular intent on a prior occasion may provide insight into his state of mind when he committed the charged offense." *Asher*, 910 F.3d at 860.

All three past acts were also "reasonably near in time" to the instant offense. *Bell*, 516 F.3d at 443 (citation omitted). The indictment charged Abbott with willfully violating individuals' civil rights between January and April 2021. These three prior acts occurred within less than a year of those events. That "relative temporal proximity increases" the "probative value" of the prior acts. *Asher*, 910 F.3d at 861; *see also United States v. Stevens*, 303 F.3d 711, 717 (6th Cir. 2002) (emphasizing that two years between the prior acts and the charged conduct was a "relatively short period of time").

Because each of the three other acts was sufficiently similar and reasonably near in time to the acts with which Abbott was charged, we conclude that the evidence was probative of Abbott's intent. We accordingly reject Abbott's arguments that the district court erred in concluding that evidence of Abbott's other acts was admissible for a permissible purpose under Rule 404(b).

### C.      Prejudice Under Rule 403

Finally, we must evaluate whether, as Abbott argues on appeal, the district court should have kept the evidence of Abbott's prior acts away from the jury because it was unduly prejudicial to Abbott under Federal Rule of Evidence 403. Rule 403 provides a "balancing test for excluding relevant evidence," but one that is "strongly weighted toward admission." *Asher*, 910 F.3d at 860. The district court "has broad discretion in balancing probative value against potential prejudicial impact." *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004). We reverse a district court's balancing only if we conclude that the district court abused its discretion. *Asher*, 910 F.3d at 860. In determining whether the district court abused its discretion, we examine the evidence "in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *LaVictor*, 848 F.3d at 447 (citation omitted).

We conclude that the district court did not abuse its discretion in balancing the prejudicial and probative value of this evidence. To be sure, evidence of Abbott's past acts had a danger of causing him unfair prejudice. *See* Fed. R. Evid. 403. Evidence of a defendant's past acts poses a particular risk of unfair prejudice in part because it risks a factfinder's engaging in an "impermissible propensity line of reasoning," *Asher*, 910 F.3d at 862—that is, "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged," *id.* (citation omitted). This type of evidence also "involves the risk that the prior act could cause the jury to reach a verdict based on emotions instead of evidence,"

especially where the prior act is particularly appalling. *Id.* at 861–62. But limiting instructions from the district court "can mitigate the risk of prejudice." *Id.* at 862. The record shows that for each other act about which the government presented evidence, the district court issued a careful limiting instruction, informing the jury that it should consider the evidence only with respect to Abbott's willfulness for the charged acts and not for any other purpose. *See, e.g.*, *Dunnican*, 961 F.3d at 875 (concluding that Rule 404(b) evidence was not unduly prejudicial in part because the district court repeatedly gave careful limiting instructions).

On the other side of the ledger, the evidence regarding Abbott's other acts had substantial "probative value." Fed. R. Evid. 403. Abbott disputed that he had the specific intent to violate civil rights under 18 U.S.C § 242. As noted, Rule 404(b) evidence has significant probative value where the government must prove a defendant's specific intent. *See, e.g.*, *LaVictor*, 848 F.3d at 448 (finding that evidence of a defendant's previous assaults was "highly probative" of his specific intent to commit the charged assault); *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994) ("In prosecuting specific intent crimes, prior acts evidence may often be the only method of proving intent.")

Thus, although the Rule 404(b) evidence risked unfair prejudice to Abbott, that risk—as minimized by the district court's careful limiting instructions—did not substantially outweigh the "highly probative" value of the testimony to Abbott's specific intent to commit several of the charged offenses. *LaVictor*, 848 F.3d at 448. We accordingly hold that the district court did not abuse its discretion in admitting the evidence.

## CONCLUSION

We affirm Abbott's conviction.